## Richmond

BOBBY LEE COLEMAN

v.

COMMONWEALTH OF VIRGINIA

No. 0177-92-2

Decided July 20, 1993

COUNSEL

Andrea C. Long (David E. Boone; Boone, Beale, Carpenter & Cosby, on brief), for appellant.

Robert B. Condon, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**WILLIS, J.**—On appeal from his conviction of operating a motor vehicle after having been declared an habitual offender, Bobby Lee Coleman contends his conviction should be reversed because the road on which he drove is within a Federal enclave and is not a ''highway'' of the Commonwealth. We disagree and affirm the judgment of the trial court.

The facts are undisputed. On June 7, 1991, Coleman was adjudged an habitual offender pursuant to Code § 46.2-355. On September 11, 1991, he operated a motor vehicle on a road within the Defense General Supply Center, a federal enclave located within Chesterfield County. Access to the enclave is restricted. There are two entrance gates. The front gate is open and manned twenty-four hours every day. Traffic through this gate is monitored. Vehicles bearing registration decals pass freely. Vehicles without decals are generally permitted to pass after the operators state their business. The back gate is open from morning until evening, Monday through Friday and is manned only for the purpose of issuing truck passes. Other vehicles may pass that gate without restriction. During Operation Desert Storm, access to the enclave was limited to people with official business.

Code § 46.2-357 states, in pertinent part:

It shall be unlawful for any person to drive any motor vehicle . . . on the highways of the Commonwealth while the order of the court prohibiting such operation remains in effect.

Code § 46.2-100 defines ''highway'' as:

[T]he entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth . . . and, for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets which have been specifically designated ''highways'' by the county . . . in which such private roads or streets are located.

This Code section also defines a ''private road or driveway'' as:

every way in private ownership and used for vehicular traffic by the owner and those having express or implied permission from the owner, but not by other persons.

This case turns on which definition fits the road on which Coleman drove. We find the road to be a highway.

■ Although the Defense General Supply Center belongs to the federal government, it lies within the concurrent jurisdiction of the United States and the Commonwealth. The laws of the Commonwealth are enforceable thereon unless a deed of jurisdictional cession has been executed, accepted and recorded in accordance with Code § 7.1-21. *See Smith v. Commonwealth*, 219 Va. 455, 461, 248 S.E.2d 135, 138 (1978), *cert. denied*, 441 U.S. 967 (1979).

In *Furman v. Call*, 234 Va. 437, 362 S.E.2d 709 (1987), the Supreme Court considered the appropriate designation of a parking lot in a condominium office complex, owned and maintained by the Condominium Association, for use by ''[t]he owners and/or tenants, and their employees, or guests.'' A sign at each entrance to the lot read: ''Private Property, No Soliciting.'' There was no bar to public entry. Unauthorized vehicles parked in the lot received warnings for the first two violations and were towed for the third. Citing *Kay Management Co. v. Creason*, 220 Va. 820, 263 S.E.2d 394 (1980), the Court held that public accessibility to the area gave rise to a presumption that it was a highway. *Furman*, 234 Va. at 440, 362 S.E.2d at 711. Finding that the presumption had not been rebutted, the Court said:

> In the present case, the evidence is undisputed that the roads around and in the condominium complex have always been open to the public 24 hours a day, seven days a week. Access by the public has never been denied by guards, gates, or any other device. The only signs read: ''Private Property, *No Soliciting*.'' (Emphasis added.) Clearly, the purpose of the signs is to prohibit soliciting, not the entry of motor vehicles operated by members of the public.

*Id.* at 440-41, 362 S.E.2d at 711.

The premises of the Defense General Supply Center are open to the public. Access through the rear gate is unlimited when that gate is open. Access through the front gate is subject only to the minimal limitation of checking in and out those vehicles that do not display registration decals. That minimal restriction in no way constitutes an appropriation of the property to private use. The roads are maintained by the United States Government for the use of those traveling them on government business or simply for the purpose of going on or through the

enclave. Nothing in the arrangement justifies denying to those travelers the protection of Virginia's public safety highway laws.

Other jurisdictions have reached this same conclusion. *See United States v. Kiliz*, 694 F.2d 628 (9th Cir. 1982) (government access gates and traffic control did not deprive a road in the Puget Sound Naval Shipyard of its character as a Washington state highway); *United States v. Barner*, 195 F. Supp. 103 (N.D. Cal. 1961) (roadway on McClellan Air Force Base held to be a public highway subject to California traffic laws); *Tracey v. State*, 350 S.W.2d 563 (Tex. Crim. App. 1961) (roadway on Dyess Air Force Base held to be a public highway subject to Texas traffic laws); *United States v. Watson*, 80 F. Supp. 649 (E.D. Va. 1948) (Fuller Road on the United States Marine Corps Reservation at Quantico held to be a public highway subject to Virginia traffic laws).

The road on which Coleman drove was open to the use of the public for purposes of vehicular travel. It was, therefore, a highway of the Commonwealth on which Code § 46.2-357 was enforceable.

The judgment of the trial court is affirmed.

*Affirmed.*

Coleman, J., and Elder, J., concurred.