COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Benton and Coleman
Argued at Salem, Virginia


STEPHEN WAYNE MITCHELL
                                        OPINION BY
v.  Record No. 1033-96-3         JUDGE JAMES W. BENTON, JR.
                                      NOVEMBER 10, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                  George E. Honts, III, Judge

          William L. Heartwell, III (Stephen R. Wills;
          William L. Heartwell, III, P.C., on briefs),
          for appellant.

          Kimberley A. Whittle, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Stephen Wayne Mitchell was convicted of driving a motor

vehicle while under the influence of alcohol, his third offense

committed within ten years of an offense.  See Code §§ 18.2-266

and 18.2-270.  On appeal, he contends that the certificate of

analysis was inadmissible and that the conviction was unlawful

because he was operating his motor vehicle on private property.

We affirm the conviction.

                              I.

     The evidence at trial proved that a deputy sheriff drove his

vehicle on a road through a privately-owned mobile home complex

to investigate a report of a crime.  The deputy sheriff testified

that, although the roads in the mobile home complex were private,

the roads were open to use by the public for vehicular travel.

He also testified that no signs were posted denoting "no

trespassing" or "private driveway" and that persons who drove through the mobile home complex were not arrested for trespassing.

When the deputy sheriff approached the rear of the complex, he observed a slow-moving truck on the road.  The deputy sheriff signalled the driver of the truck to stop and asked the driver for his driver's license.  The deputy sheriff noticed that the driver, Stephen Wayne Mitchell, had an odor of alcohol about him.  In response to the deputy sheriff's inquiries, Mitchell said he had consumed two beers while he was fishing.  After Mitchell made that admission, the deputy sheriff asked him to perform field sobriety tests.  The deputy sheriff then arrested Mitchell for driving under the influence of alcohol, advised Mitchell of the implied consent law, and took Mitchell to perform a breathalyzer test.

The trial judge overruled Mitchell's objection to the admissibility of the certificate of analysis reporting the result of Mitchell's breathalyzer test.  The certificate indicated that Mitchell's blood alcohol content was .14 by weight by volume.

At the conclusion of all the evidence, Mitchell moved to strike the evidence and argued that the evidence failed to prove he was driving on a public highway.  Mitchell also argued that he was not operating the vehicle, as specified by Code § 18.2-266, because he was not driving the vehicle on a highway.  The trial judge denied Mitchell's motion.  The jury convicted Mitchell of

driving under the influence of alcohol, third offense.

II.

As pertinent to this appeal, the implied consent law applies to "[a]ny person . . . who operates a motor vehicle upon a highway, as defined in [Code] § 46.2-100, . . . , if [that person] is arrested for a violation of [Code] § 18.2-266."  Code § 18.2-268.2(A).  If arrested for such a violation, that person is statutorily "deemed . . . , as a condition of such operation, to have consented to have samples of [that person's] . . . breath taken for a chemical test to determine the . . . alcohol and drug content of [that person's] blood."  Code § 18.2-268.2.  Mitchell contends that the certificate of analysis was inadmissible because he was driving on a private road, which was not a highway as defined by Code § 46.2-100.  We disagree.

Prior to 1993, the implied consent law required proof that the arrested person operated a motor vehicle on a "public" highway.  See Code § 18.2-268.2 (1992) (amended 1993); former Code § 18.2-268(B) (1991) (repealed 1992); Thurston v. City of Lynchburg, 15 Va. App. 475, 478-79, 424 S.E.2d 701, 703 (1992).  However, by Acts of Assembly 1993, Chapter 746, the General Assembly amended and reenacted Code § 18.2-268.2 by deleting the word "public" and inserting the phrase "as defined in § 46.2-100" after the word "highway."[3]  When the General Assembly amended the

_____

[3]In pertinent part, the Act reads as follows:

§ 18.2-268.2.  Implied consent to post-arrest chemical test to determine drug or alcohol content of blood. -- A. Any person, whether licensed by Virginia or not, who operates a

- 4 -

statute, the Supreme Court of Virginia had consistently ruled that the word "highway," as statutorily defined in Code § 46.2-100, was not limited to public roads.  See Furman v. Call, 234 Va. 437, 439-40, 362 S.E.2d 709, 711 (1987).  See also Morris v. Dame's Ex'r., 161 Va. 545, 555, 171 S.E. 662, 665 (1933).

> By statute, "highway" is defined as follows:
> [T]he entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets which have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located.

Code § 46.2-100.[4]  In unambiguous language, the Court has ruled

---

> motor vehicle upon a ~~public~~ highway, as defined in § 46.2-100, in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266 or of a similar ordinance within two hours of the alleged offense.

1993 Va. Acts ch. 746.

[4]This same statute defines "private road or driveway" as follows:

> [E]very way in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons.

Code § 46.2-100.

that the definition of "highway" includes "ways on <u>private property</u> that are open to public use for vehicular travel." <u>Kay Management v. Creason</u>, 220 Va. 820, 832, 263 S.E.2d 394, 401 (1980) (emphasis added).

In <u>Furman</u>, the Supreme Court reviewed its earlier cases and ruled that the statutory definition of highway encompassed the roads and parking area surrounding a privately-owned condominium office complex. The Court held that "the test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic." 234 Va. at 439, 362 S.E.2d at 710. The Supreme Court then noted that the evidence proved "the roads around and in the condominium complex have always been open to the public 24 hours a day, seven days a week." <u>Id.</u> at 440-41, 362 S.E.2d at 711. The Court also noted that the property owners had never denied the public access to the property "by guards, gates, or any other device." <u>Id.</u>

Although the issues in <u>Furman</u> were decided in the context of a civil negligence action, the Supreme Court was required to consider the statutory definition of highway "[b]ecause the statutory rules of the road only apply to highways." <u>Id.</u> at 439, 362 S.E.2d at 710. When the <u>Furman</u> decision was rendered, the wording of Code § 46.2-100 was identical to the wording of the current statute. Thus, we believe the <u>Furman</u> test for determining whether a road is a "highway" is controlling in this case.

- 6 -

Mitchell correctly notes that the statutory definition of "highway" contains two prongs.  <u>See</u> Code § 46.2-100.  Contrary to Mitchell's argument, however, we find no basis to conclude that the second prong is more restrictive than the <u>Furman</u> test.  By using the word "and" to connect the two prongs of the definitions, the legislature clearly expanded the definition of "highway" to provide law enforcement agencies additional authority to act in those instances where roads that otherwise would be deemed private roads have been designated "highways" by a local ordinance.[5]  Thus, in those instances where guards, gates, barriers, or other devices could be erected to effectively bar general public access, <u>see</u> <u>Furman</u>, 234 Va. at 440, 362 S.E.2d at 711, the General Assembly has provided that even those private roads shall be deemed "highways" for law enforcement purposes whenever the locality has acted to designate those private roads as "highways" by ordinance.

---

[5]When the legislature last amended the definition of "highway" in Code § 46.2-100 by Acts 1979, c. 100, it added the following language:

> <u>and, for law-enforcement purposes, the entire</u>
> <u>width between the boundary lines of all</u>
> <u>private roads or private streets which have</u>
> <u>been specifically designated "highways" by an</u>
> <u>ordinance adopted by the governing body of the</u>
> <u>county, city, or town in which such private</u>
> <u>roads or streets are located.</u>

Code § 46.2-100 (emphasis added).  <u>See</u> <u>Kay Management Co., Inc. v. Creason</u>, 220 Va. 820, 830 n.3, 263 S.E.2d 394, 401, n.3 (1980).

Furthermore, Mitchell's suggestion that only the second prong of the highway definition applies to the implied consent law because that law is enacted for law enforcement purposes would lead to a result incompatible with the statutory purpose. We find no basis to attribute to the General Assembly an intent that the implied consent law would only apply to drivers on formerly "private roads or private streets which have been specifically designated 'highways' by an ordinance." Code § 46.2-100. Obviously, the implied consent law was designed to apply to the operation of motor vehicles on the broad range of roads described by the language within both prongs of the definition of highway.

We are cognizant that, as a general rule, "'governmental regulations with respect to the operation of motor vehicles ordinarily are applicable only to operation on public streets and highways, and do not apply to operation on private premises, including operation on a private driveway or a private road.'" Parker v. DeBose, 206 Va. 220, 223, 142 S.E.2d 510, 512 (1965) (quoting 60 C.J.S., Motor Vehicles, § 349, pp. 815-816). However, Furman clearly holds that for purposes of determining whether roads are private (and thus exempt from application of enforcement of the motor vehicle laws) or a "highway" (and not exempt from enforcement of the motor vehicle laws), courts must focus "upon the degree to which the way is open to public use for vehicular traffic." 234 Va. at 439, 362 S.E.2d at 710. See also

Kay Management, 220 Va. 820, 831-32, 263 S.E.2d 394, 401 (1980)
(holding a street in an apartment complex was a highway); cf.
Prillaman v. Commonwealth, 199 Va. 401, 100 S.E.2d 4 (1957)
(holding that a service station lot was not a highway).

This Court in Flinchum v. Commonwealth, 24 Va. App. 734, 485
S.E.2d 630 (1997), analyzed the Furman and Prillaman decisions
and ruled that the Furman test was the basis for determining
whether the parking lot of a sporting goods store was a highway.
Although the Court applied the Furman test, the Court ruled that
the facts of the case were more akin to the facts in Prillaman
and held that the parking lot was not a highway. Id. at 736-37,
485 S.E.2d at 631. Significantly, the Court did not limit its
analysis to the second prong of the highway definition of Code
§ 46.2-100 and did not hold that only the second prong of the
definition was applicable in a criminal proceeding.

Similarly, in reviewing a conviction under the habitual
offender statute, this Court was required to determine whether a
road was a "highway" for enforcement of Code § 46.2-357. See
Coleman v. Commonwealth, 16 Va. App. 747, 750, 433 S.E.2d 33, 35
(1993). We ruled that the roads inside a federal enclave were
not private where the "[a]ccess through the rear gate is
unlimited when that gate is open" and the minimal restriction
provided by the continuously-manned security gates at the
entrances was for the purpose "of checking in and out those
vehicles that do not display registration decals." Id. at 749,

433 S.E.2d at 35. In holding that the road was a "highway" for law enforcement purposes, the Coleman decision also relied upon the Supreme Court's ruling in Furman and the definition of highway in Code § 46.2-100. Thus, Coleman implicitly held that, for law enforcement purposes, the term "highway" is defined by reference to either prong of the definition of "highway" contained in Code § 46.2-100.

For these reasons, we hold that the implied consent law applies to any way or place encompassed within the two-prong definition of "highway" contained in Code § 46.2-100. We further hold that no evidence in this record proved that the streets in the mobile home complex were "restricted exclusively to the private use of the [mobile home] dwellers or those persons who visited them." Kay Management, 220 Va. at 830, 263 S.E.2d at 401. Indeed, the evidence proved that the roads in the mobile home complex were open to the unrestricted use of the public. We, therefore, hold that the implied consent law applied to Mitchell when he operated his vehicle on the roads of the mobile home complex. Accordingly, the trial judge did not err in admitting into evidence the certificate of analysis.

III.

Unlike Code § 18.2-268.2, which applies only when a person operates a motor vehicle on a highway, Code § 18.2-266 is generally silent as to the place where the offense may be committed. Code § 18.2-266 reads as follows:

It shall be unlawful for any person to drive

- 10 -

or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely. A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii) or (iv).

For the purposes of this section, the term "motor vehicle" includes mopeds, while operated on the public highways of this Commonwealth.

This Court recently precisely addressed the other issue raised in this appeal, i.e., whether the "conviction must be reversed because Code § 18.2-266 does not apply to driving on private property in Virginia while under the influence of alcohol." Gray v. Commonwealth, 23 Va. App. 351, 352, 477 S.E.2d 301, 302 (1996). Citing Valentine v. Brunswick County, 202 Va. 696, 119 S.E.2d 486 (1961), this Court reasoned as follows:

Code § 18.2-266 is "clear, unambiguous and means what it says." Other than for the operation of a moped, the statute does not specify that the driving or operating that it criminalizes must occur on a public highway, and we decline the invitation to construe the statute to impose that requirement. . . . Code § 18.2-266 "is not a highway regulation and cannot be construed as part of the general codification of the State motor

vehicle laws."

Gray, 23 Va. App. at 353, 477 S.E.2d at 302-03 (citation omitted).  We, therefore, hold that public ownership of the property upon which the vehicle is driven or operated is not an element the Commonwealth must prove in a prosecution for driving in violation of Code § 18.2-266.

For these reasons, we affirm the judgment.

Affirmed.