COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Humphreys
Argued at Chesapeake, Virginia


JOHNNIE LANG EDWARDS, A/K/A
 SAMUEL JONES
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2751-00-1          JUDGE ROBERT P. FRANK
                                       SEPTEMBER 25, 2001
CITY OF VIRGINIA BEACH


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                   A. Bonwill Shockley, Judge

            Theresa B. Berry (Berry, Ermlich, Lomax &
            Bennett, on brief), for appellant.

            Lawrence S. Spencer, Jr., Assistant City
            Attorney (Leslie L. Lilley, City Attorney, on
            brief), for appellee.


     Johnnie Lang Edwards (appellant) was convicted in a bench

trial of driving under the influence, in violation of Virginia

Beach City Ordinance 21-336, which incorporates by reference

Virginia Code § 18.2-266.  On appeal, he contends that Code

§ 18.2-268.2 entitles him to a breathalyzer test and, therefore,

the trial court erred in finding appellant guilty of driving

under the influence since he was never administered such a test.

Finding no error, we affirm the judgment of the trial court.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## BACKGROUND

On May 8, 2000, Officer S.E. Wichtendahl was on routine patrol in the City of Virginia Beach. Sometime after 9:00 p.m., he received a radio message to "be on the lookout" for a driver who was apparently intoxicated. At 9:25 p.m., he located a truck which matched the description in the radio dispatch. He then saw appellant backing a truck into a parking space in the private lot of a Chick-Fil-A restaurant. At no time did he see appellant on a public street or highway.

Officer Wichtendahl testified he saw appellant exit the vehicle, stagger toward the restaurant, and lean on the door as he entered the establishment. The officer saw appellant lean on the counter as he ordered his food. When Officer Wichtendahl finally approached appellant, he noticed appellant smelled of alcohol, had bloodshot eyes, and was unsteady on his feet.

Officer Wichtendahl asked appellant to walk outside with him and perform some field sobriety tests. Appellant exited with the officer and attempted to perform several tests, but he was unable to complete them successfully. Officer Wichtendahl then arrested appellant for being drunk in public.

Officer Wichtendahl took appellant before a magistrate and obtained a warrant for driving while under the influence, in violation of the Virginia Beach ordinance, which incorporates Code § 18.2-266 by reference.

-

While at the magistrate's office, appellant stated he had not been given a breath test. Officer Wichtendahl responded he was not required to give appellant a breath test because appellant was arrested on the private property of Chick-Fil-A restaurant. The statement of facts, submitted by appellant's counsel, also acknowledged, "[appellant] did not request a breath test."

Appellant testified he was doing landscape work earlier in the day and was eating french fries in the Chick-Fil-A when the officers arrived. According to appellant, immediately upon seeing him, the police arrested him. He claimed he did not attempt to perform any field sobriety tests.

Appellant testified he repeatedly asked for a breath test and asked the officers how they could arrest him for driving under the influence.

Appellant argued he was entitled to a breath test in accordance with Code § 18.2-268.2. The trial court found appellant guilty of driving while under the influence.

## ANALYSIS

Essentially, appellant contends that Code § 18.2-268.2 imposes an independent duty upon the City to give him a breath test.[1]

---

[1] Appellant does not contend that he is entitled to the breath test as a substantive due process right. He limits his argument to a "right" created by Code § 18.2-268.2.

-

Code § 18.2-268.2 provides, in part,

> A. Any person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway, as defined in § 46.2-100, in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266 or § 18.2-266.1 or of a similar ordinance within two hours of the alleged offense.

> B. Any person so arrested for a violation of § 18.2-266(i) or (ii) or both, or § 18.2-266.1 or of a similar ordinance shall submit to a breath test. If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given. The accused shall, prior to administration of the test, be advised by the person administering the test that he has the right to observe the process of analysis and to see the blood-alcohol reading on the equipment used to perform the breath test. If the equipment automatically produces a written printout of the breath test result, the printout, or a copy, shall be given to the accused.

At the time of appellant's arrest, Code § 46.2-100 provided the following definitions:

> "Highway" means the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets which have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located.

-

      \*       \*       \*       \*       \*       \*       \*

> "Private road or driveway" means every way in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons.

"'[T]he test for determining whether a way is a "highway" depends upon the degree to which the way is open to public use for vehicular traffic.'" Roberts v. Commonwealth, 28 Va. App. 401, 403, 504 S.E.2d 890, 891 (1998) (quoting Furman v. Call, 234 Va. 437, 439, 362 S.E.2d 709, 710 (1987)). Two lines of cases are frequently cited when this analysis focuses on whether a private area is a highway under Code § 46.2-100.

One line begins with Prillaman v. Commonwealth, 199 Va. 401, 100 S.E.2d 4 (1957). Prillaman, whose driver's license was suspended, drove his car across a service station lot. The Supreme Court found:

> The premises of Setliff, owner and operator of Master Forks Service Station, were open to the public upon his invitation. The invitation was for private business purposes and for his benefit. He had the absolute right at any time to terminate or limit this invitation. He could close his doors and bar the public or any person from vehicular travel on all or any part of his premises at will. He had complete control of their use.

Id. at 407-08, 100 S.E.2d at 8-9.

The Supreme Court reversed and dismissed Prillaman's conviction of driving on a highway without a valid license, concluding that the service station's premises were not "'open

-

to the use of the public for the purpose of vehicular traffic' and were, therefore, not a 'highway'" under the precursor to Code § 46.2-100. Id. at 408, 100 S.E.2d at 9 (citing former Code § 46-1(8) (1950)). Accord Flinchum v. Commonwealth, 24 Va. App. 734, 737-38, 485 S.E.2d 630, 631-32 (1997) (finding a parking lot of a sporting goods store was not a highway); Roberts, 28 Va. App. at 404-06, 504 S.E.2d at 891-92 (finding a parking lot of a convenience store was not a highway).

On the other hand, Kay Management Co. v. Creason, 220 Va. 820, 263 S.E.2d 394 (1980), found the streets of an apartment complex were "highways." The following facts were significant:

> Uncontradicted evidence discloses that Kay serviced and managed the streets at its expense, but posted traffic signs on the access street and elsewhere "with the direction" of the local police and fire departments. It also appears from the evidence that the streets were paved, curbed, and bordered by sidewalks, and that they contained painted lines marking spaces for perpendicular parking. There is evidence that the travel section of Barcroft View Terrace was well-defined, extending 21 feet between the outer extremities of the parking space lines and 31 feet between the parked cars on each side. A single short paved street or roadway provided the only apparent entrance to the apartment complex from Columbia Pike. There is no evidence that the streets or roadways of the complex were restricted exclusively to the private use of the apartment dwellers or those persons who visited them. There is no evidence that access was denied to the public by security guards, gates, or warning signs. The streets contained parking spaces for the convenience of apartment occupants, and they carried traffic along the travel

-

portions.  The streets may have been
intended for the primary purpose of
providing parking areas for apartment
tenants, but there is no evidence that they
were constructed only for this purpose.

Id. at 830, 263 S.E.2d at 400-01.

The Supreme Court concluded,

[w]e hold that the evidence of accessibility
to the public for free and unrestricted use
gave rise to a prima facie presumption that
the streets of Barcroft View Apartments were
highways within the definition of Code
§ 46.1-1(10) [current Code § 46.2-100].  It
thereupon became Kay's burden to rebut the
presumption by showing that the streets were
used for vehicular travel exclusively by the
owners and those having either express or
implied permission from the owners.  No such
evidence appears in the record.

Id. at 832, 263 S.E.2d at 402.

In Furman, the Supreme Court again addressed whether an

intersection in a condominium parking area was a "highway."  In

finding that the Kay Management presumption controlled, the

Court held:

"In the present case, the evidence is
undisputed that the roads around and in the
condominium complex have always been open to
the public 24 hours a day, seven days a
week.  Access by the public has never been
denied by guards, gates, or any other
device.  The only signs read:  "Private
Property, No Soliciting."  (Emphasis added).
Clearly, the purpose of the signs is to
prohibit soliciting, not the entry of motor
vehicles operated by members of the public.

Because Furman has not rebutted this
evidence and the resulting presumption that
the public has full and unrestricted access
to the parking area, we hold that the area

-

> is a "highway" as defined by Code
> § 46.1-1(10)."

234 Va. at 440-41, 362 S.E.2d at 711.

In Mitchell v. Commonwealth, 26 Va. App. 27, 492 S.E.2d 839 (1997), we ruled that roads within a mobile home complex were "highways." The roads in the complex, while private, were open for public use. We found "no evidence in this record proved that the streets . . . were 'restricted exclusively to the private use of the [mobile home] dwellers or those persons who visited them.'" Id. at 34, 492 S.E.2d at 842 (quoting Kay Management, 220 Va. at 830, 263 S.E.2d at 401).

The Kay Management line of cases all involve private roads within a privately owned complex, where the private roads were open to the public for vehicular travel.

Conversely, in the Prillaman line of cases, the private areas were not streets for vehicular travel but were parking lots allowing access to various commercial establishments.

The presumption created in Kay Management has no application in parking lot cases. Roberts and Flinchum, both parking lot cases decided after Kay Management, did not discuss that presumption. Roberts, 28 Va. App. at 403-06, 504 S.E.2d at 891-92 (discussing Kay Management but not applying its presumption of public use); Flinchum, 24 Va. App. at 735-38, 485 S.E.2d at 630-31 (declining to apply the Kay Management presumption of public use). Their analysis instead addressed

-

the specific facts of each case, i.e., "the degree to which the way is open to the public use for vehicular traffic." Furman, 234 Va. at 439, 362 S.E.2d at 710.

Prillaman, Flinchum and Roberts control here. Appellant was in the private parking lot of a Chick-Fil-A restaurant. No evidence proved the parking lot was "open to the use of the public for purposes of vehicular traffic." Code § 46.2-100. The parking lot was only an access to the business, not a thoroughfare for general vehicular traffic. From the evidence, the fact finder could conclude that Chick-Fil-A "issued an invitation to do business to the public" and that access "was restricted to this invitation." Roberts, 28 Va. App. at 406, 504 S.E.2d at 892. Based on the nature of the parking lot and the restricted public access to the premises, we find that the parking lot was not a "highway" as defined by Code § 46.2-100.

We conclude that since the "implied consent" statute, Code § 18.2-268.2, is restricted by its terms to a "highway," appellant's contention that that section affords him a right to a breathalyzer test fails. Since Code § 18.2-268.2 does not apply under the facts of this case, we do not address whether that statute affords a suspect such an entitlement.

## CONCLUSION

Appellant's argument that he was denied a statutory right to a breath test and therefore his conviction was unlawful is based on a faulty premise. He was not entitled to the test

-

under either the ordinance or the Code; therefore, his conviction cannot be tainted by the failure to give him the test.  For this reason, we affirm his conviction.

<u>Affirmed.</u>