COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Frank and Kelsey
Argued at Chesapeake, Virginia


KENNETH EDWARD CAMPBELL

                                              OPINION BY
v.    Record No. 3027-01-1           JUDGE D. ARTHUR KELSEY
                                            NOVEMBER 19, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF YORK COUNTY
                  N. Prentis Smiley, Jr., Judge

         Robert C. Astor for appellant.

         H. Elizabeth Shaffer, Assistant Attorney
         General (Jerry W. Kilgore, Attorney General,
         on brief), for appellee.


     The appellant, Kenneth Edward Campbell, claims the trial

court erred on two grounds when it convicted him for driving as

a habitual offender (second offense) in violation of Code

§ 46.2-357. First, Campbell argues that the Commonwealth had no

jurisdiction over this offense because the road he traveled on

was exclusively within a federal military base. Second,

Campbell contends the road should not be deemed a public highway

for purposes of the habitual offender statute. Persuaded by

neither argument, we affirm.

                              I.

     While stationed as a guard at Cheatham Annex, a federal

military facility in York County, Officer Gayle Sharp observed a

car approach her guardhouse at the Annex's entrance on Route 199 East on March 27, 2001. Sharp, whose job required her to restrict access to the facility to those showing proper credentials, asked the driver, Kenneth E. Campbell, for identification. When Campbell could not produce the requested identification, Sharp denied his entry to the facility, instructed him to pull his car to the shoulder of Route 199, and called security. Following Sharp's instructions, Campbell parked his car on the side of the road outside the fence surrounding the Annex.

Shortly afterward, York County Deputy Michael Wright arrived at the entrance to the Annex. Wright observed Campbell sitting in his car with his engine running, parked between two Commonwealth road signs. Wright approached Campbell's car, ascertained Campbell's identity, and checked Campbell's license on the police computer. Upon learning that Campbell was driving with a suspended license while a habitual offender, Wright placed Campbell under arrest.

At trial, the Commonwealth proved that Campbell was a habitual offender at the time he was driving outside the Cheatham Annex. In response, Campbell moved to dismiss on two grounds. First, Campbell claimed that his arrest occurred on land under the federal government's exclusive jurisdiction. Second, Campbell argued that the habitual offender statute did not cover the particular road upon which his arrest occurred.

The trial court denied both motions, convicted Campbell of driving as a habitual offender (second offense), and sentenced him to five years in prison with two years suspended. Campbell now appeals his conviction, asserting the same two grounds he raised at trial.

## II.

When reviewing a trial court's decision on appeal, we examine the evidence in the light most favorable to the prevailing party, the Commonwealth in this case, granting it the benefit of any reasonable inferences. Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997). We review the trial court's factual findings only to determine if they are plainly wrong or devoid of supporting evidence. See Mier v. Commonwealth, 12 Va. App. 827, 828, 407 S.E.2d 342, 343 (1991). If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge.

Together, these principles require the appellant to shoulder the burden of showing that the trial court's decision "constituted reversible error." McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citations omitted); see also Davis v. Commonwealth, 37 Va. App. 421, 429-30, 559 S.E.2d 374, 378 (2002). "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was

correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Oliver v. Commonwealth, 35 Va. App. 286, 297, 544 S.E.2d 870, 875 (2001) ("The trial court's judgment is presumed to be correct.").

A.

Campbell's first argument, that the Commonwealth has no jurisdiction over his case, asserts that his arrest occurred within the geographical boundaries of the Cheatham Annex —— a military base Campbell claims to be governed exclusively by federal law. Finding that "the gated entrance to Cheatham Annex is the part of the property that they are concerned about," the trial court denied the motion. The court likewise held that, "notwithstanding that, we probably have concurrent jurisdiction." For the following reasons, we affirm the trial court on its alternative holding.

Under settled principles, "the mere ownership of land by the United States does not divest a state of its jurisdiction over that land, and . . . the nature and extent of the federal jurisdiction is dependent upon the consent of the state." Smith v. Commonwealth, 219 Va. 455, 461, 248 S.E.2d 135, 139 (1978) (citing James v. Dravo Contracting Co., 302 U.S. 134 (1937)); Waltrip v. Commonwealth, 189 Va. 365, 53 S.E.2d 14 (1949).

By statute, Virginia consents to cede only "concurrent jurisdiction" to the United States to prosecute crimes committed

- 4 -

on lands transferred to the federal government.  Smith, 219 Va. at 461, 248 S.E.2d at 139; see Code § 7.1-18.1(C) ("Over all lands hereafter acquired by the United States, the Commonwealth hereby cedes to the United States concurrent governmental, judicial, executive and legislative power and jurisdiction."). "When the United States acquires land by a state ceding its jurisdiction, the state may impose 'conditions which are not inconsistent with the carrying out of the purpose of the acquisition,'" including the condition that the state retain concurrent jurisdiction to enforce its traffic laws.  Gay v. Commonwealth, 10 Va. App. 229, 230, 391 S.E.2d 737, 737 (1990) (quoting United States v. Unzeuta, 281 U.S. 138, 142 (1930)).[1] "Any additional jurisdiction over this land can be relinquished only if the Commonwealth executes a deed of cession, and the deed must be formally accepted by the United States."  Smith, 219 Va. at 461, 248 S.E.2d at 139.

Among other things, concurrent jurisdiction includes "jurisdiction of the courts of Virginia over persons, transactions, matters and property on such lands . . . ."  Code § 7.1-18.1(C).  Territory subject to concurrent jurisdiction thus comes within "the plenary authority of both the Federal Government and the State," permitting both to exercise police

---

[1] See generally 1A Julius L. Sackman, Nichols on Eminent Domain § 2.131[1] n.13.1 (3d ed. rev. 2000) (surveying numerous cession statutes from various states).

- 5 -

powers.  North Dakota v. United States, 495 U.S. 423, 429 n.2

(1990).

Because of the clear public policy announced in the cession

statute, "it is presumed that the Commonwealth retains

concurrent jurisdiction over the area embracing the locus of the

crime."  Smith, 219 Va. at 461, 248 S.E.2d at 139.  The

presumption in favor of concurrent jurisdiction can be rebutted,

but only by a clear manifestation of a specific intent to do so.

While a state may agree to transfer the last "residuum of

jurisdiction which otherwise it would be free to exercise,"

Silas Mason Co. v. Tax Comm. of Washington, 302 U.S. 186, 197

(1937), a total forfeiture of sovereignty cannot be presumed or

implied.

Applied to this case, these principles demonstrate that

the Commonwealth did not divest itself of concurrent legislative

jurisdiction over Cheatham Annex.  The cession deed provided:

> WHEREAS, the United States of America,
> in order to provide for more convenient and
> efficient law enforcement operation desires
> to adjust the jurisdiction so that it will
> enjoy concurrent legislative jurisdiction
> with the Commonwealth.
>
> WHEREAS, the Director of Real Estate,
> Department of the Navy, the authorized
> officer, by letter dated September 27, 1984,
> requested that the Commonwealth cede such
> legislative jurisdiction so that both
> sovereigns would enjoy concurrent
> legislative jurisdiction.
>
> *    *    *    *    *    *    *

> WITNESS that, for and in consideration
> of the premises, the Commonwealth of
> Virginia . . . hereby cede[s] such
> legislative jurisdiction to the United
> States of America <u>so each party hereto will
> enjoy concurrent jurisdiction</u> . . . .

(Emphasis added.)

The phrase "legislative jurisdiction" refers to the "lawmaking power of a state" and "the power of a state to apply its laws" to a particular set of facts. <u>Adventure Communications v. Kentucky Registry of Election Fin.</u>, 191 F.3d 429, 435 (4th Cir. 1999) (citations omitted). <u>See</u> <u>generally</u> Willis L.M. Reese, <u>Legislative Jurisdiction</u>, 78 Colum. L. Rev. 1587, 1587-94 (1978). Given the accepted meaning of concurrent jurisdiction, particularly when coupled with the concept of legislative jurisdiction, the provisions in the Cheatham cession deed hardly can be interpreted to cede all state power to the federal government, leaving it with exclusive federal jurisdiction over the enclave.

Campbell correctly points out that the deed goes on to reserve the "power to serve civil and criminal process on such lands . . . ." This reservation, he asserts, has the effect of eviscerating all concurrent state power except the power to serve process. Campbell's cramped interpretation of the cession deed, however, finds no favor in our law. Virginia courts presume that the Commonwealth retains plenary concurrent jurisdiction unless it has been expressly ceded to the federal

government.  The inclusion in the deed of a lesser-included power (the authority to serve process) perhaps can be criticized as redundant.  But it cannot be construed as an implied forfeiture of all incidents of dual sovereignty inherent in the concept of concurrent jurisdiction.

After all, Virginia law requires the Commonwealth — at a minimum — to preserve state authority in the cession deed to serve process on individuals within federal enclaves.  See Code § 7.1-18.1(C); Code § 7.1-21(6).  The underlying "purpose of this reservation is to prevent the land involved from becoming an asylum for fugitives from justice."  United States v. Schuster, 220 F. Supp. 61, 64 (E.D. Va. 1963).  As a result, the service-of-process provision does not sufficiently rebut the presumption of concurrent jurisdiction.[2]

B.

Campbell's second argument, that the roadway on which he was arrested was not a "highway" for purposes of the habitual offender statute, likewise must be rejected.

---

[2] It would be an entirely different case if the Cheatham Annex deed, like one executed by Virginia Governor James Monroe in 1801, provided that the state ceded "all the jurisdiction which this Commonwealth possesses over the public lands" except the power to execute process.  Western Union Tel. Co. v. Chiles, 214 U.S. 274, 277 (1909).  The plain import of that cession deed (in contrast to the equally plain meaning of the Cheatham Annex deed) adequately rebuts the presumption of concurrent jurisdiction.  Id.

Virginia law prohibits a habitual offender from driving on the "highways of the Commonwealth" while his driver's license remains revoked. Code § 46.2-357. Though the statute defines a highway as the "entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel," Code § 46.2-100, the identifying feature of a highway remains "the degree to which the way is open to public use for vehicular traffic." Furman v. Call, 234 Va. 437, 439, 362 S.E.2d 709, 710 (1987).

The public's free and unrestricted use of a roadway supports the inference that a road is a highway. Evidence that the roadway's users must obtain either explicit or implicit permission to use the road may refute this inference. See Kay Mgmt. Co. v. Creason, 220 Va. 820, 832, 263 S.E.2d 394, 402 (1980). Mere inconveniences to free travel on a road (such as "checking in and out" vehicles at checkpoints or access gates) do not inhibit public use of the roadway to the extent that they divest a road of its character as a highway. See Coleman v. Commonwealth, 16 Va. App. 747, 749, 433 S.E.2d 33, 35 (1993) (where a federal enclave is "open to the public," the presence of an access gate for "checking in and out" of the enclave did not preclude the road from being a highway under the habitual offender statute).

A combination of impediments on free and unrestricted travel —— private ownership of the way, use reserved for

business invitees, absence of traffic signs, the owner's ability to remove people from the premises — must exist to categorize a road as private. See Roberts v. Commonwealth, 28 Va. App. 401, 406, 504 S.E.2d 890, 892 (1998); see also Flinchum v. Commonwealth, 24 Va. App. 734, 737-38, 485 S.E.2d 630, 631 (1997) (a parking lot open only to invitees was not a highway).

In this case, we need not answer the question whether the road inside the Annex's gate was a highway for purposes of the habitual offender statute because Campbell never entered that road. Although Campbell intended to enter that secured portion of the road, Sharp denied his entry when he could not produce proper identification. Then, while still outside the secured portion of the Annex, Campbell pulled his car away from the Annex and parked on the side of Route 199 until the police arrived. Campbell remained, at all times, on an unrestricted portion of the highway, in an area open to any member of the driving public. There, Campbell clearly drove on a highway covered by the habitual offender statute. See Coleman, 16 Va. App. at 749, 433 S.E.2d at 35 (classifying a minimally-restricted road within a federal enclave as a highway).

Even if, as Campbell insists, some small area outside the Annex gate did not qualify as a public highway, the entire length of Route 199 leading up to that area obviously does. Officer Sharp's observations, as well as the exhibits and

photographs reviewed by the trial court, confirm that (i) Route 199 is the only road leading to the Annex gate area, and (ii) Campbell drove up Route 199 for a considerable distance before entering the area between the warning sign and the Annex gate. No evidence proved any other person was in the car. Thus, the absence of any viable alternative explanation for Campbell's car getting to the gate area (other than by Route 199) sufficiently supports the conclusion that Campbell drove on a public highway.

## III.

The evidence proved the Commonwealth had concurrent jurisdiction to enforce its traffic laws against Campbell. The trial court did not err in rejecting Campbell's argument that the cession deed limited this jurisdiction. Nor did the trial court err in finding that Campbell drove his vehicle on a public highway in violation of the habitual offender statute. We thus affirm Campbell's conviction.

<u>Affirmed</u>.