COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Senior Judge Clements

JOSEPH PAUL FORREST, JR.

                                                    MEMORANDUM OPINION*
v.        Record No. 1027-22-4                      PER CURIAM
                                                    JUNE 6, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

(Allison H. Carpenter, Deputy Public Defender; Helen A. Randolph,
Assistant Public Defender, on brief), for appellant.

(Jason S. Miyares, Attorney General; Elizabeth Kiernan Fitzgerald,
Assistant Attorney General, on brief), for appellee.


Joseph Paul Forrest, Jr., appeals the trial court's judgment revoking his previously

suspended sentence. Forrest argues that the trial court abused its discretion by "finding [him] in

violation of the terms of his probation and sentencing him using a criterion contrary to the

evidence before the court." He also argues that the court abused its discretion by exceeding the

discretionary sentencing guidelines and failing to consider "alternative punishment" and

mitigation evidence. After examining the briefs and record in this case, the panel unanimously

holds that oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). The trial court's judgment is affirmed.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND

In September 2018, the trial court convicted Forrest, on his guilty plea, of possession of a Schedule I or II controlled substance and sentenced him to 2 years' incarceration with 1 year and 11 months suspended, conditioned on good behavior and successful completion of supervised probation. Forrest finished his term of incarceration and began supervised probation on September 24, 2018. On December 13, 2018, his probation officer reported that Forrest did not contact the probation office for a month after probation began and had incurred a new "drug charge[]."

On December 26, 2018, the trial court issued a rule to show cause why Forrest's previously suspended sentence should not be revoked but continued the revocation proceeding until the new charge was resolved. On September 25, 2019, however, Forrest's probation officer reported that Forrest had absconded from supervision and had not communicated with his probation officer in over three months. Accordingly, on October 8, 2019, the trial court issued a capias for Forrest's arrest, which was served on Forrest on November 1, 2019. On the day of his arrest, Forrest submitted a urine sample that tested positive for marijuana, cocaine, and alcohol.

On December 13, 2019, the trial court found Forrest in violation of the terms of his probation under the show cause and capias but took the matters under advisement while he participated in the Arlington Country Drug Court program. The trial court also required Forrest to successfully complete the drug court program as a condition of his probation. The trial court continued the matters and extended Forrest's probation to afford him the opportunity to complete drug court.

In April 2022, Forrest's probation officer reported that Forrest had been terminated from the drug court program.[1] Kelly Nieman, the Acting Drug Court Coordinator, informed the trial court

---

[1] The probation officer also reported that Forrest had suffered a new conviction for possession of cocaine.

that Forrest had demonstrated a "repeated and consistent pattern of non-compliance with supervision" and an "unwillingness to fully commit to the change necessary to be successful in the . . . program." Forrest's violations included 19 curfew violations, 9 missed treatment sessions, 3 diluted urine samples, 17 "missed IVR call-ins," 18 "SCRAM violations," 1 late arrival to court, 2 missed court appearances, 17 missed urine screens, 2 failures to report changes in employment, and 1 missed home visit. Forrest had been "docketed for termination" from the program five times and, most recently, had been "*provisionally* reinstated" with "no tolerance for any [future] infractions." Notwithstanding the "no tolerance" provision, Forrest returned a diluted urine sample immediately after his reinstatement. Nieman reported that Forrest had "been given more chances to remain in [the drug court program] than any other participant in the program's history" but had demonstrated that he was "not committed" to the program. On May 3, 2022, the trial court issued a second rule to show cause based on Forrest's failure to complete drug court.

At a May 6, 2022 hearing, Forrest moved for a continuance because one of his attorneys was out of the country. Before ruling on the motion, the trial court ordered Forrest to provide a urine sample. After a brief recess, a probation officer reported that Forrest had tested positive for amphetamines and had "a faint line for alcohol." Forrest claimed that he was "taking an inhaler," which, according to the probation officer, "could cause a possible . . . false positive." Forrest's counsel proffered that his inhaler had caused similar issues in drug court. The trial court granted Forrest's motion to continue but revoked his bond based on its "concern[] for his safety."

At the next hearing, Forrest proffered a letter from Meghan Iams, his drug court treatment provider, stating that he had continued receiving treatment on an outpatient basis after his removal from drug court and was "actively engaged" with his treatment, which included attending two "groups" weekly, weekly therapy sessions, and monthly psychiatric services. Forrest argued that despite "a very rocky road," he had remained drug free while participating in drug court. He

asserted that his Albuterol inhaler caused the positive amphetamine test, which Iams had documented. Forrest argued that his primary issue with drug court was not drug use or criminal behavior; rather, it centered on his inability to communicate with the drug court personnel and understand the information they provided him. He speculated that his communication issues might have stemmed from his long-time drug use or a traumatic brain injury he suffered after being shot in the head in 2013. Forrest asserted that he was improving and had "turn[ed] the corner" in his battle against his addiction.

Mr. Simmons, Forrest's probation officer and a drug court representative, asserted that Forrest had "given up" on drug court and failed to complete "simple" requirements because he "didn't want to," including providing his Albuterol prescription and work schedule, and calling the curfew line on time. Simmons asked the trial court to order a CCAP evaluation because Forrest would benefit from "additional structure." Simmons reported that the drug court program had "worked with" Forrest and given him multiple opportunities.

The Commonwealth also asked the trial court to order a CCAP evaluation. The Commonwealth emphasized Neiman's letter, which reported Forrest's numerous drug court violations and repeated refusal to participate in the program. The Commonwealth argued that Forrest would not do well on probation and asked the court to consider CCAP.

In allocution, Forrest stated that he had some success during the two and a half years he was in the drug court program. He was upset that he did not graduate and lamented the lost opportunity to address his mental health via drug court. He claimed that his father and grandfather were alcoholics and he wanted to "break[] that cycle" for his children. He asserted that he would "stay on the right path" and asked the trial court not to "give up" on him because he was "willing to keep fighting."

The trial court found that Forrest was "unwilling to comply with the [drug court program's] structure that is required for [his] recovery." The trial court found that, despite multiple opportunities, Forrest "clearly" would not comply with any term of probation because he was "bent on using substances that are illegal." The court highlighted that in 2018, Forrest was arrested on a drug charge only two months after he had been sentenced on the underlying charge in this case. Finding that drug court had "bent over backwards" for Forrest but he had "reached the end of the runway," the trial court imposed the balance of his suspended sentence.[2]

Following the trial court's ruling, Forrest argued that there was no evidence of "current [drug] use." The trial court held that to the extent Forrest had moved the trial court to reconsider its ruling, the motion was denied. Forrest appeals.

ANALYSIS

"On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). "'[T]he trial court's "findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion."'" *Id.* (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)).

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Under the revocation statutes in effect when Forrest's revocation proceedings began, once a trial court found that a probationer had

---

[2] The discretionary sentencing guidelines recommended between "[t]ime served" and one year of incarceration.

violated the terms of the suspension, it was obligated to revoke the suspended sentence and it was in "full force and effect." Code § 19.2-306(C)(ii) (2020 Cum. Supp.). The trial court was then permitted—but not required—to re-suspend all or part of the sentence. *Id.*; *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002).[3]

The record demonstrates that Forrest violated the terms and conditions of his probation by sustaining a new conviction for possession of cocaine, absconding from supervision, and failing to complete the drug court program. Indeed, Forrest repeatedly disregarded the drug court program requirements and evaded drug testing by missing 17 urine screens and providing 3 diluted urine samples. Forrest had "been given more chances to remain in [drug court] than any other participant *in the program's history*" but failed to complete "simple" requirements and repeatedly demonstrated that he was "not committed" to participating in the program. (Emphasis added). Considering the above record, the trial court found that Forrest had violated the conditions of his suspended sentence, was "unwilling to comply with the [drug court program's] structure that is required for [his] recovery," and would not comply with any terms of probation.

---

[3] Effective July 1, 2021, Code § 19.2-306(C) was amended and no longer requires the trial court to revoke the sentence. 2021 Va. Acts Sp. Sess. I, ch. 538. Instead, "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court *may* revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C) (emphasis added). The "newly enacted Code § 19.2-306.1 limits the period of active incarceration" for "certain 'technical violations.'" *Green*, 75 Va. App. at 78. Nevertheless, "[i]f the court finds the basis of a violation of the terms and conditions of a suspended sentence or probation is that the defendant . . . has violated another condition other than (i) a technical violation . . . , then the court may revoke the suspension and impose or resuspend any or all of that period previously suspended." Code § 19.2-306.1(B).

The trial court issued the first rule to show cause and capias in December 2018 and October 2019, respectively. *See Green*, 75 Va. App. at 83-84 n.4 (holding that the recent changes to the probation framework did not apply when the "revocation proceeding began" before July 1, 2021). Although the trial court issued its second rule to show cause in May 2022, that show cause was based on Forrest's failure to complete the court-mandated drug court program, a violation that was *not* technical in nature. *Delaune v. Commonwealth*, 76 Va. App. 372, 382-83 (2023). Accordingly, even under the second rule to show cause, the trial court retained the discretion to impose "any or all" of Forrest's previously suspended sentence. Code § 19.2-306.1(B).

Notwithstanding the above, Forrest argues that the trial court abused its discretion by finding him "in violation of the terms of his probation and sentencing him using a criterion contrary to the evidence." Seizing on the trial court's comment that he was "bent on using substances that are illegal," Forrest maintains the trial court relied on evidence not in the record because he "produced no positive urine screens" while participating in drug court. Instead, in Forrest's view, the evidence demonstrated that he was successful and law abiding during his two and a half years in the program. In addition, Forrest contends that the trial court abused its sentencing discretion by "not considering alternative punishment," "exceeding the guidelines recommendation," and "failing to consider mitigation evidence."

Initially, the record belies Forrest's assertion that there was no evidence of Forrest's continued drug use. As noted above, Forrest was arrested on a drug charge only two months after he had been sentenced on the underlying charge in this case. On November 1, 2019, he tested positive for marijuana, cocaine, and alcohol. In addition, while in drug court, he missed 17 urine screens and returned 3 diluted urine samples. That evidence supports the trial court's conclusion that Forrest used controlled substances and evaded drug testing while in the drug court program.

Additionally, "[a]bsent clear evidence to the contrary in the record, the judgment of a circuit court comes to an appellate court with a presumption that the law was correctly applied to the facts." *Damon v. York*, 54 Va. App. 544, 555 (2009) (alteration in original) (quoting *Bottoms v. Bottoms*, 249 Va. 410, 414 (1995)). "Only 'clear evidence to the contrary in the record' suffices to rebut the presumption." *Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007) (quoting *Campbell v. Commonwealth*, 39 Va. App. 180, 186 (2002)). So on review, this Court does not "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." *Id.* (quoting *Bullock v. Commonwealth*, 48 Va. App. 359, 368 (2006)). A "trial court's remark is not, in and of itself,

the full context simply because it represents the only point at which the court expressly addressed the issue in dispute." *Id.* (quoting *Parker v. Commonwealth*, 41 Va. App. 643, 656 (2003)).

Here, the context demonstrates that the trial court found Forrest in violation of his probation based on his new conviction for possession of cocaine, absconding from supervision, and failing to complete the drug court program. Indeed, despite a historic number of opportunities, Forrest repeatedly demonstrated his unwillingness to comply with even "simple" drug court requirements. Those circumstances supported the trial court's findings and reasonably led the trial court to conclude that Forrest would not comply with conditions of probation.

Finally, we reject Forrest's argument that the trial court abused its sentencing discretion. "The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). Accordingly, a judge's failure to follow the sentencing guidelines is "not . . . reviewable on appeal or the basis of any other post-conviction relief." *Cf.* Code § 19.2-298.01(F).[4] In addition, when fashioning a sentence in this case, it was within the trial court's purview to weigh any mitigating factors Forrest presented, including his lack of new criminal offenses while he was in drug court and the "head trauma" he suffered in 2013. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Balanced against those factors, however, were the facts that he had repeated drug offenses, failed to comply with probation, and his habitual failure to cooperate with the drug court's program's requirements.

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740

---

[4] The General Assembly adopted a similar provision specific to the revocation-specific sentencing guidelines. *See* Code § 19.2-306.2(D).

(2007). Forrest's disregard of the terms of his suspended sentence and complete disregard for the requirements of the drug court program support the trial court's finding that he was not amendable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Forrest failed to make productive use of the grace that had been extended to him repeatedly.

"For probation to have a deterrent effect on recidivism, real consequences must follow a probationer's willful violation of the conditions of probation." *Price*, 51 Va. App. at 449. Upon review of the record in this case, we conclude that the sentence the trial court imposed represents such real consequences and was a proper exercise of judicial discretion. *See Alsberry*, 39 Va. App. at 321-22 (finding the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant's] offenses and his continuing criminal activity").

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*