PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 03-4957

TERRENCE ORMSTOM SMITH,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-03-221-A)

Argued: November 30, 2004

Decided: January 27, 2005

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

---

Affirmed in part; reversed and remanded in part by published opinion. Judge Luttig wrote the opinion, in which Judge Niemeyer and Judge King joined.

---

## COUNSEL

**ARGUED:** Mark Howard Bodner, Fairfax, Virginia, for Appellant. Sean Thomas Martin, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

LUTTIG, Circuit Judge:

Following the denial of his motion to suppress evidence gathered in an allegedly unlawful seizure, appellant Terrence Ormstom Smith was convicted before a federal magistrate judge of possession of cocaine, making a false statement to a law enforcement officer, and driving with a suspended license. The district court affirmed the denial of Smith's motion to suppress and affirmed all of his convictions. On appeal, Smith challenges the denial of his motion to suppress, and challenges his conviction for driving with a suspended license on the grounds that the CIA access road is not a highway, as required by Virginia law to sustain such a conviction. We hold that even if the actions Smith challenges constitute a seizure, that seizure was lawful because Smith's encounter with officers was consensual. We also hold that Smith's challenge to his conviction for driving with a suspended license is meritorious. Accordingly, we affirm Smith's convictions for possession of cocaine and for making a false statement, but reverse his conviction for driving with a suspended license.

I.

At 1:38 a.m. on October 14, 2002, Smith drove to the call box on the CIA access road outside the main gate of the CIA headquarters in McLean, Virginia, and said he was lost and needed directions. J.A. 206-07. A CIA officer directed Smith to pull to the Jersey barrier, which was about 75 meters from the call box and closer to the main gate to the CIA. *Id.* Smith did so. *Id.*

When Smith reached the barrier, CIA Security Protective Service Officers Adam Petrus and Steve Songy approached Smith's car and yelled at him and his passengers to put their hands up. *Id.* at 207-08. Both officers were armed, Petrus with a nine millimeter pistol and Songy with a shotgun. *Id.* at 208. It is unclear from the record whether Petrus had his weapon out of the holster. The parties agree that the shotgun was in a position from which it could readily be fired, although they disagree as to whether it was pointed at the passengers of the car. *Id.*

Petrus approached the car and asked Smith and his passengers whether they knew where they were, whether they had drugs or alcohol in the vehicle, and for identification. *Id*. at 38. Smith said he did not have a driver's license; upon being pressed on whether his license was suspended, he admitted that it was. *Id*. at 38-39. Petrus asked Smith to step out of the car and asked for his name and date of birth; Smith provided a false name and the wrong date of birth. *Id*. at 40. Petrus ran a security check on that name and birth date and found no record of such a person. *Id*. Petrus then requested that Smith consent to a pat-down for weapons, which Smith did. *Id*. at 40-41. Because he smelled alcohol, Petrus had another officer perform a field sobriety test. *Id*. at 43. Smith failed and was arrested. *Id*. Upon a search of Smith incident to arrest, the officer found a paraphernalia pipe used to smoke a controlled substance. *Id*. at 44.

Smith was charged with possession of cocaine, operating a vehicle with a blood alcohol concentration of over .08 percent, operating a vehicle while under the influence of alcohol, driving with a suspended license, and providing false information to an authorized person investigating a violation of law or regulation. J.A. 4-8. Smith moved to suppress all evidence supporting these charges, alleging that the action of the officers in surrounding his car with weapons constituted an unlawful seizure. *See* J.A. 10-11. The magistrate judge denied this motion. The prosecutor dismissed the charge of driving with a blood alcohol level of over .08 percent, and Smith was acquitted of driving under the influence of alcohol. J.A. 12. Smith was convicted of the remaining charges, and sentenced to two consecutive prison terms of one year and of one day. J.A. 13.

Smith appealed to the district court, challenging both the magistrate judge's ruling on his suppression motion and his conviction for driving with a suspended license on a "highway." The district court affirmed the magistrate judge's judgment on both points. J.A. 18-27, 205-15. Smith now appeals.

## II.

First, Smith challenges the district court's affirmance of the magistrate judge's denial of his motion to suppress the evidence gathered against him by Officer Petrus. Smith claims that a seizure occurred

when the armed officers approached his car, making him feel that he could not leave without answering their questions. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). A seizure is permissible under the Fourth Amendment either if officers "have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity," or if the stop is made "pursuant to a practice embodying neutral criteria." *Brown* v. *Texas*, 443 U.S. 47, 51 (1979). Smith contends that neither of these circumstances is present, and thus that the alleged seizure violated the Fourth Amendment and that evidence gathered against him during the seizure must be suppressed.

The district court denied the motion to suppress, concluding that a seizure did occur, but that the officers had reasonable articulable suspicion for the seizure. J.A. 212, 214. We review the district court's conclusions of law *de novo*, but review its underlying factual conclusions only for clear error. *United States* v. *McKinnon*, 92 F.3d 244, 246 (4th Cir. 1996). We are not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record. *MM* v. *School District*, 303 F.3d 523, 536 (4th Cir. 2002).

We do not reach the district court's conclusions that a seizure occurred and that reasonable suspicion existed, because we find that even if the officers' show of force was a seizure, that seizure was consensual and thus reasonable.[1] *Florida* v. *Jimeno*, 500 U.S. 248, 250-51 (1991) ("[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.").

---

[1]Similarly, we decline to reach the government's argument that the Fourth Amendment is not implicated at all on CIA property. *See United States* v. *Jenkins*, 986 F.2d 76, 78 (4th Cir. 1993) (citing caselaw holding that searches on closed military bases are "exempt from the usual Fourth Amendment requirement of probable cause").

Appellant was not forced to proceed from the call box to the Jersey barrier, but rather did so in order to obtain directions from the officers, which he had requested. *See* J.A. 210-11. The initiation of the encounter was thus undoubtedly consensual. Smith contends that he was no longer free to leave — and thus presumably no longer consented to the encounter — when he was surrounded by officers with weapons. We do not believe the scope of his consent can be viewed so narrowly. The Supreme Court has held that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251. In fact, the Fourth Amendment does not even require that the suspect *actually* consent to a government search; factual determinations by the government, such as the presence of consent, must be *reasonable*, but are not required always to be *correct*. Cf. *Illinois* v. *Rodriguez*, 497 U.S. 177, 185 (1990) (holding that the general rule that factual determinations must only be reasonable applies when law enforcement evaluates whether a party giving consent to a search has the authority to do so).

We are satisfied that Smith's unauthorized and voluntary approach to officers outside the CIA headquarters in the middle of the night justified a belief by the officers that he was consenting to the customary security precautions required at that time of the night at the entrance to such a protected facility, regardless of whether Smith intended to consent to a demand for identification by armed officers or whether he even knew that he was so consenting. A reasonable person would certainly know that officers at the CIA gate would be armed when approaching an unidentified car, and that such officers would seek to determine who was entering the property without authorization.[2] As such, a reasonable person would view a decision to initiate a consensual encounter with officers near the gate of the CIA as consent to these foreseeable circumstances. The officers were thus plainly justified in believing that their encounter with Smith at the Jersey barrier was consensual. Therefore, if any seizure occurred, it was within the

---

[2]In fact, federal regulations require anyone "entering on to or when on [a Central Intelligence] Agency installation" to produce proper identification on demand. 32 C.F.R. § 1903.6(b).

scope of Smith's consent and thus reasonable within the meaning of the Fourth Amendment.

## III.

Appellant also contends that his conviction for driving on a suspended license is not sustainable, because such a conviction requires that an individual drive on a "highway" and the access road in front of the CIA is not a "highway" under Virginia law.[3] Again, we review the factual conclusions of the district court for clear error. *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Virginia law prohibits anyone whose driver's license has been suspended or revoked from "thereafter driv[ing] any motor vehicle . . . on any highway in the Commonwealth until the period of such suspension or revocation has terminated." Va. Code § 46.2-301(B). A "highway" is defined, in relevant part, to include

> the entire width between the boundary lines of every way or place *open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys* . . . .

Va. Code § 46.2-100 (emphasis added). Smith contends that the CIA access road is not a highway because it is not "open to the use of the public."

The district court reasoned and held as follows, that "[t]he Defendant's entrance from Route 123 to the CIA access road was not barred by guards or gates and no signs indicated the access road was a restricted area [and that] [t]his satisfies the prima facie presumption that the road was open to the public and, therefore, a public highway." J.A. 24. *See Kay Management Co., Inc.* v. *Creason*, 220 Va. 820, 832 (Va. 1980) ("We hold that the evidence of accessibility to the public for free and unrestricted use gave rise to a prima facie presumption that the streets [at issue] were highways . . . .").

---

[3]State law governs traffic safety and the permissible use and operation of vehicles within a CIA installation. 32 C.F.R. § 1903.3.

Smith argues that the government presented no evidence to support the district court's factual conclusions. However, on appeal, the government itself contends that signs prohibiting unauthorized entry were present. *See Appellee's Br.* at 4 ("Signs are posted along the roadway advising that only CIA employees and those with authorized business may enter CIA property."); *see also* J.A. 54 (testimony of Officer Petrus) ("Any individual who proceeds to the CIA, there are road signs along the road that inform only CIA employees and those with authorized business are to only enter.").

Because the undisputed evidence in the record reveals that signs barring entry were present, and because the government concedes as much, the district court's conclusion to the contrary is clear error. The presence of signs barring public entry establishes that the access road is not open to public use, and thus is not a highway under Virginia law. *See Furman* v. *Call*, 234 Va. 437, 439 ("Thus, the test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular travel."); *see also id.* at 441 (finding a road was a highway because signs indicating "Private Property, No Soliciting" only prohibited soliciting, not the entry of the public).

The government offers two arguments against this conclusion. First, the government notes that Smith did not meet with any interference as he drove down the access road. But this fact is not determinative. In *Flinchum* v. *Commonwealth of Virginia*, the Court of Appeals of Virginia concluded that the parking lot of a sporting goods store was *not* a highway, without providing any indication that the driver encountered interference as he drove into the parking lot. 24 Va. App. 734 (1997). The court noted the presence of a "no trespassing" sign and held that "'the premises . . . were open to the public *upon [the owner's] invitation. The invitation was for private business purposes and for his benefit.*'" *Id.* at 736-37 (emphasis added) (quoting *Prillaman* v. *Commonwealth*, 199 Va. 401, 407-08 (1957)). Likewise in this case, the presence of signs barring unauthorized admittance is sufficient to establish that the access road is not "open to the use of the public for purposes of vehicular travel." Va. Code § 46.2-100.

Second, the government argues that the road is used not only by employees and official visitors, but also by taxi and bus drivers taking

authorized personnel to the gate, delivery trucks, and persons in search of directions such as defendant. But parties bringing authorized personnel or deliveries are not members of the public at large, but are "those with authorized business" whom the government admits are permitted to use the roadway. *Appellee's Br.* at 4. The suggestion that the fact that individuals who are lost, such as the defendant, may drive on the road establishes the character of the access road as a highway is even less persuasive, given that the government not only does not argue that the access road is open to such individuals, but describes Smith's presence on the access road when lost as "without authorization." *Appellee's Br.* at 13. Because the general public is not permitted on the access road, it is not "open to the use of the public for purposes of vehicular travel." Va. Code § 46.2-100. *See also Flinchum*, 24 Va. App. at 737 (holding that a road not "open to the public at all times" was not a "highway").

## CONCLUSION

For the foregoing reasons, we affirm Smith's convictions for possession of cocaine and for making a false statement to an investigating officer, but reverse his conviction for driving with a suspended license. The case is remanded for resentencing consistent with this opinion.

*AFFIRMED IN PART; REVERSED AND REMANDED IN PART*