ELDER, J.,
concurring, in part, and dissenting, in part.
I concur in the majority’s ruling, based on the Commonwealth’s concession, that Officer Cox was in the curtilage of the Robinsons’ home when he first viewed probable illegal activity in the form of underage drinking. However, I disagree with the majority that Officer Cox’s entry onto the curtilage was reasonable under the facts of this case. I believe it is the subjective intent of the citizen regarding whether to waive a constitutional right that ultimately controls. The legal fiction that implied consent exists for the police to enter the curtilage of a private residence for a knock- and-talk has never been held by the United States or Virginia Supreme Court to override the pronouncement of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), that assessing the voluntariness of consent to a search is to be judged from the subjective perspective of the particular citizen involved. Because the evidence fails to prove either (1) that anyone with a reasonable expectation of privacy in the Robinsons’ curtilage in fact consented to Officer Cox’s entry thereon or (2) that Officer Cox could reasonably have concluded, under the facts of this case, that those with a reasonable expectation of privacy would have consented if asked, I would hold the evidence fails to support the trial court’s conclusion that Officer Cox’s presence on the Robinsons’ property was reasonable and did not violate the Fourth Amendment’s pronouncement against unreasonable searches. Thus, I respectfully dissent from the majority’s affirmance of the Robinsons’ convictions.
The majority states, “Here, ... we are not questioning whether Robinson extended her consent to search the property, but rather, whether, under the totality of the circumstances, she had rescinded her implied consent to enter that property.” Settled principles establish that Officer Cox’s entry onto the Robinsons’ property, in and of itself, was a search *564 within the meaning of the Fourth Amendment’s reasonableness requirement, see, e.g., United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326, 334 (1987), albeit one arguably less intrusive than an entry or actual search of the dwelling itself. The majority concludes the entry was reasonable based on the existence of what it finds was the homeowners’ implied consent “to have members of the general public — including law enforcement officers — enter the driveway and front sidewalk,” parts of the property they could be expected to cross if entering for purposes of a “knock and talk.”
Although Fourth Amendment issues are generally judged by standards of the objective reasonableness of a police officer’s beliefs or actions, not all Fourth Amendment issues are judged by such standards. See, e.g., Kyer v. Commonwealth, 45 Va.App. 473, 481 n. 2, 612 S.E.2d 213, 217 n. 2 (2005) (en banc) (noting community caretaker standard considers officer’s subjective intent). This case presents an example of the inherent tension between the general Fourth Amendment standard for assessing the reasonableness of an officer’s actions and the standard for determining whether an individual has consented to a search. The United States Supreme Court has held that the test for determining the voluntariness of a consent to search is based on the subjective intent of the individual claimed to have waived his right to be free from unreasonable searches. See Schneckloth, 412 U.S. at 227, 93 S.Ct. at 2047-48, 36 L.Ed.2d at 862-63; see also United States v. Wilson, 895 F.2d 168, 171 (4th Cir.1990) (comparing objective standard for determining whether seizure has occurred with subjective standard for determining consent to search).
Under a subjective test, the fact that the Robinsons did not take affirmative steps to exclude all trespassers does not establish that they subjectively intended to consent to police entry onto the curtilage of their property for purposes of a knock-and-talk or any other purpose. Neither the United States nor the Virginia Supreme Court has ever held, as the majority of our Court does today, that “implied consent [to entry by the police for a knock-and-talk] is presumed to exist *565 absent evidence of an affirmative intent to exclude the public from the premises,” see discussion, supra, at 548 n. 6 (citing State v. Somfleth, 168 Or.App. 414, 8 P.3d 221, 227 (2000)) (emphasis added), or that “[an] implied invitation [to enter for such a purpose] arises by operation of law,” see id.
Here, the police made no claim that the Robinsons gave actual consent to have the police enter the curtilage of their home on the night at issue. Officer Cox testified that the police made no attempt to contact the Robinsons’ home by telephone or any other means before driving onto the property that night. The fact that the Robinsons had not posted “no trespassing” signs and may have consented, if asked, to allow other members of society such as letter carriers and Girl Scouts onto the curtilage does not mean that they would, if asked, have granted the same privilege to the police on the night at issue. Thus, if the entry is to be judged purely from the subjective perspective of the homeowner, the absence of actual consent ends the inquiry.
At most, then, the Commonwealth might claim that, although Officer Cox lacked actual consent, his entry onto the curtilage did not violate the Fourth Amendment because a reasonable officer would have believed those having a reasonable expectation of privacy in the curtilage did consent or would have consented, if asked, to have the police enter for a knock-and-talk on the night at issue. Cf. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297, 302 (1991) (holding “[t]he standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of ‘objective’ reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?” (emphasis added)); Illinois v. Rodriguez, 497 U.S. 177, 185-86, 110 S.Ct. 2793, 2799-2800, 111 L.Ed.2d 148, 159-60 (1990) (holding that general rule that officer’s assessments of fact need not always be correct as long as they are reasonable applies to officer’s assessment of whether party giving consent to search has authority to do so); United States v. Smith, 395 F.3d 516, 519 (4th Cir.2005) (“[The Fourth Amendment does not even require that the suspect *566 actually consent to a government search; factual determinations by the government, such as the presence of consent, must be reasonable, but are not required always to be correct.”). I believe the objective reasonableness of an officer’s assessment of whether a homeowner has consented should not be relevant when the issue deals with protecting one’s Fourth Amendment rights in his home and its curtilage. See, e.g., Ronald Bacigal, Choosing Perspectives in Criminal Procedure, 6 Wm. & Mary Bill of Rts. J. 677, 729 (1998). As one commentator has opined,
The fundamental right of individuals to control their own fate by exercising or waiving constitutional rights must take precedence over a police officer’s mistaken perception of consent, no matter how objectively reasonable or understandable the mistake may have been. From the police perspective, the only sensible guide is that “they should never rely on consent as the basis for a search unless they must. If they do search relying on consent, they should be prepared to meet a heavy burden of proof that consent was in fact meaningfully given. And even then, because of the difficulties of proof, they should expect to be told often that the search was not proper.”
Id. (quoting Lloyd L. Weinreb, Generalities of the Fourth Amendment, 42 U. Chi. L.Rev. 47, 64 (1976)).
Nevertheless, even if we examine whether Officer Cox could reasonably, albeit erroneously, have believed those having a reasonable expectation of privacy in the curtilage would have consented to his entry, if asked, we must conclude the entry violated the Fourth Amendment. The evidence fails as a matter of law to support a finding that Officer Cox could reasonably have believed these particular citizens would have consented to his entry on the night at issue. Under the facts of this case, both the adult homeowners and any juveniles who resided with them had a reasonable expectation of privacy in the home and the portions of the curtilage not viewable from the public road. See, e.g., State v. Reddick, 207 Conn. 823, 541 A.2d 1209, 1213-14 (1988) (holding adult child legitimately residing in home of parent has reasonable expectation that *567 home will be free of government intrusion); see also Grant v. State, 267 Ark. 50, 589 S.W.2d 11, 14 (1979) (recognizing implicitly that, absent parental consent for search, child has reasonable expectation of privacy in premises in which he resides with parent). Officer Cox went to the property that night because the police had received multiple reports that an underage drinking party was underway at the Robinsons’ home. Under these circumstances, Officer Cox could not reasonably have concluded that either (a) the Robinsons, if they were at home, or (b) “the juvenile host” of the party, if the Robinsons were not present,[16] would have consented to entry of the police on the curtilage, where they could readily discover evidence of criminal activity not visible from the public road.[17]
For these reasons, I would hold the evidence fails to support the majority’s conclusion that implied consent justified the entry of the Robinsons’ curtilage. Further, absent evidence (1) that anyone with a reasonable expectation of privacy in the Robinsons’ curtilage in fact consented to Officer Cox’s entry thereon or (2) that Officer Cox could reasonably have concluded, under the facts of this case, that those with a reasonable expectation of privacy would have consented if asked, I would hold that Officer Cox’s presence on the Robinsons’ property *568 was unreasonable and violated the Fourth Amendment’s pronouncement against unreasonable searches. Thus, I respectfully dissent from the majority’s affirmance of the Robinsons’ convictions.

. Officer Cox testified that he was searching for the party’s juvenile host and appeared to have believed, at least after he confirmed that underage drinking was occurring, that he would not find any adults present.

. Although a reasonable person test presupposes an innocent person, see, e.g., Florida v. Bostick, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) (applying principle in evaluating objective test for determining whether suspect was illegally seized), a subjective test, such as the test for consent to search, must take into consideration an individual’s guilty knowledge. Although guilty persons may be found to have given valid consent to search, even though such consent is against their self-interest, see United States v. Mendenhall, 446 U.S. 544, 555, 559, 100 S.Ct. 1870, 1878, 1880, 64 L.Ed.2d 497, 510, 513 (1980), it is not objectively reasonable for an officer to assume, without asking, that a person he suspects is guilty of engaging in some criminal activity on his property would consent to law enforcement entry onto the curtilage if asked.