**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-4191**

─────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

TIMOTHY M. WILSON,

        Defendant - Appellant.

─────────────

**No. 12-4205**

─────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

LUIS R. AHORRIO, JR., a/k/a Luis R. Ahorrio,

        Defendant - Appellant.

─────────────

Appeals from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:10-cr-00488-WDQ-1; 1:10-cr-00488-WDQ-2)

─────────────

Argued: October 31, 2013      Decided: November 26, 2013

─────────────

Before WILKINSON, DUNCAN, and DIAZ, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Susan Amelia Hensler, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland; Michael Daniel Montemarano, MICHAEL D. MONTEMARANO, PA, Columbia, Maryland, for Appellants. Joshua L. Kaul, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Martin Bahl, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant Timothy M. Wilson. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Timothy Wilson and Luis Ahorrio were tried and convicted of possession with the intent to distribute, and conspiracy to distribute 280 grams or more of cocaine base. Their indictment and eventual conviction stemmed from a routine traffic stop during which a narcotics detection dog alerted to the presence of contraband in their vehicle. Wilson and Ahorrio appeal their convictions arguing, among other things, that the district court erred in denying their motions to suppress evidence obtained in the ensuing search of their car. For the reasons that follow, we affirm.

I.

A.

On July 23, 2010, Ahorrio drove from his home in Queens, New York to meet Wilson at his home in southern New Jersey. From there, they rode south in a rented Toyota Corolla.

As they travelled through Worcester County, Maryland, they passed Corporal Howard Kennard of the Maryland State Police, who was monitoring traffic on that stretch of U.S. Route 113. Cpl. Kennard--accompanied by Trooper First Class Dana Orndorff and Camo, a narcotics detection dog--stopped Wilson and Ahorrio after observing their vehicle exceeding the speed limit and following another vehicle too closely.

3

Cpl. Kennard approached the vehicle and began the usual traffic-stop formalities. In the process, Cpl. Kennard observed that Wilson and Ahorrio both appeared nervous and that the driver of the car, Ahorrio, was not listed on the vehicle's rental agreement.

Trooper Orndorff subsequently approached the car and began conversing with Ahorrio while Cpl. Kennard spoke with Wilson. Both men stated that they were traveling to watch drag races, but they gave different geographic destinations: Wilson indicated that they were traveling to North Carolina while Ahorrio said they were driving to Georgia.

Cpl. Kennard then asked Ahorrio for permission to conduct a canine scan of the vehicle. Ahorrio replied that the officers would need to ask Wilson. Trooper Orndorff then instructed Wilson to exit the vehicle, retrieved Camo, and began the scan, concluding when Camo alerted at the front driver's-side door. Trooper Orndorff then informed Cpl. Kennard of the alert and rewarded Camo with a toy on the side of the road.

Cpl. Kennard then began to search the vehicle, where he ultimately found clear Ziploc bags containing 327.9 grams of a substance containing cocaine base. Those small bags were contained within a larger white plastic bag, concealed within a brown paper Burger King bag, and hidden beneath the front passenger-side seat. The outer Burger King bag also contained a

4

receipt bearing the address of a Burger King located less than a half mile from Ahorrio's residence in Queens. Cpl. Kennard then ordered Ahorrio and Wilson to the ground and arrested them.

B.

Ahorrio and Wilson were charged in a single indictment with conspiracy to distribute and possession with intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. § § 841 & 846. Both defendants moved to suppress the evidence found during the search of their vehicle. Wilson argued, in particular, that Camo's alert was so unreliable that it could not have given the officers probable cause to believe that narcotics were actually present in the car.

The government provided records of Camo's 81 prior field scans, as well as information about his training and certification. While the results of his training and evaluation exercises indicated that Camo was highly reliable--he falsely alerted in training only once--his field records told a different story. Of the 81 field scans Camo had performed, he had alerted in all but four. But of the 77 scans where Camo alerted, in only 24 did officers actually locate any narcotics.

The government argued that in the 53 cases where Camo alerted but no narcotics were found, the odor of drugs may nonetheless have lingered in the car. Moreover, the government argued that in twenty of those cases there was direct evidence

5

that drugs or drug users had recently been present in the car. The district court adopted these conclusions and held that Camo's training and certification were sufficient to establish his reliability. It therefore denied Wilson's and Ahorrio's motions to suppress.

The case then proceeded to trial, at the conclusion of which Wilson and Ahorrio were convicted on both counts. They were each sentenced to ten years' imprisonment.

## II.

In considering a district court's denial of a motion to suppress, we review its legal conclusions de novo and its factual determinations for clear error. United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005). In doing so, we consider the evidence in the light most favorable to the government. United States v. Hamlin, 319 F.3d 666, 671 (4th Cir. 2003). We may affirm the district court's decision on any ground supported by the record, not just the ground upon which it actually reached its decision. Smith, 395 F.3d at 519.

Accordingly, we affirm the district court's denial of the motions to suppress on the ground that the officers are entitled to the good faith exception to the suppression remedy. We therefore need not decide whether Camo's alerts were, in fact,

6

sufficiently reliable to give the officers probable cause to search the vehicle.

At the time of the search, we had indicated that a narcotics detection dog was per se reliable if it had completed an adequate training program and obtained the appropriate certifications. Addressing this issue in an unpublished opinion, we stated that evidence of the dog's "training and certification was enough by itself to establish [his] reliability so that his positive alerts for controlled substances established probable cause." United States v. Koon Chung Wu, 217 F. App'x 240, 245 (4th Cir. 2007) (unpublished) (per curiam).

"For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Davis v. United States, 131 S. Ct. 2419, 2427 (2011). "[W]hen the police act with an objectively reasonable good-faith belief that their conduct is lawful . . . the deterrence rationale loses much of its force and exclusion cannot pay its way." Id. at 2427-28 (internal citations and quotations omitted). In Davis, the Supreme Court thus concluded that the exclusionary rule does not apply "when the police conduct a search in objectively reasonable reliance on binding appellate precedent." Id. at 2434. We believe the same reasoning applies when officers act in objectively reasonable reliance on our unpublished circuit

7

precedent. This is so because "[e]xcluding evidence in such cases deters no police misconduct and imposes substantial social costs." Id.

Our opinion in Wu would reasonably have led Cpl. Kennard and Trooper Orndorff to believe that their search of Wilson and Ahorrio's vehicle was legal. Wu indicated that Camo's alert provided probable cause for the search because his training and certification established his reliability regardless of his actual field performance.

The Supreme Court's subsequent decision in Florida v. Harris, 133 S. Ct. 1050 (2013), makes clear that a more nuanced analysis is required, but it was decided well after the search at issue in this case. Harris reiterates the longstanding principle that we avoid "rigid rules, bright-line tests, and mechanistic inquiries" for probable cause. Id. at 1055. Accordingly, when a dog's reliability is challenged, its performance in the field "may sometimes be relevant" alongside training and certification records in the totality of the circumstances. Id. at 1057. But because Harris was not the controlling law at the time of the search in question, it can have no bearing on whether the officers believed, in good faith,

8

that their conduct was lawful.  The district court therefore did not err in denying appellants' motions to suppress.[*]

## III.

For the foregoing reasons, Wilson's and Ahorrio's convictions and sentences are

AFFIRMED.

---

[*] We have also considered the other arguments raised by appellants and find them to be without merit.