**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1121**

_____

GARNELL WALLS,

> Plaintiff – Appellant,

v.

PRINCE GEORGE'S COUNTY; MELINDA BOLLING, individually and in and her official capacity,

> Defendants – Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah L. Boardman, District Judge. (8:23-cv-01359-DLB)

_____

Argued:  December 10, 2025                    Decided:  February 23, 2026

_____

Before WILKINSON and WYNN, Circuit Judges, and KEENAN, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:**  Jordan David Howlette, JUSTLY PRUDENT, Washington, D.C., for Appellant.  Andrew Jensen Murray, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Largo, Maryland, for Appellees.  **ON BRIEF:**  Shelley L. Johnson, Acting County Attorney, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Largo, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Garnell Walls brought this action against Prince George's County, Maryland (the County), and Melinda Bolling, individually and in her official capacity as the former Director of Permitting, Inspections, and Enforcement (DPIE) (collectively, the defendants), after DPIE allegedly denied Walls' application for a waiver that would have permitted him to build an interim well and septic system on his property.  Walls asserts that DPIE's actions constituted a regulatory taking in violation of the Fifth Amendment, and he now appeals from the district court's dismissal of his claim under Federal Rule of Civil Procedure 12(b)(6).[1]  After reviewing the record, we conclude that Walls' claim is not ripe for review, because he has not plausibly alleged that the County reached a final decision whether he can build an interim well and septic system on his property.  We therefore affirm the district court's dismissal of his case.

I.

We review de novo the district court's ruling granting a motion to dismiss under Rule 12(b)(6).  In applying this standard, we accept as true the factual allegations set forth

---

[1] The district court did not engage in a Rule 12(b)(1) analysis because the requirements for ripeness in the context of regulatory takings do not implicate the court's subject matter jurisdiction.  *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 545 (4th Cir. 2013) (explaining that ripeness in the context of a regulatory taking is "prudential rather than…jurisdictional").  We observe that neither party has challenged this aspect of the district court's decision, and we agree with the court's application of the Rule 12(b)(6) standard in this case.  *See N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1230 (10th Cir. 2021) (holding that ripeness in the context of a regulatory taking "is properly analyzed under Rule 12(b)(6) rather than Rule 12(b)(1)").

2

in the complaint and draw all reasonable inferences in favor of the plaintiff. *See DePaola v. Clarke*, 884 F.3d 481, 484 (4th Cir. 2018). With these principles in mind, we state the facts as alleged by Walls in the complaint.

In 1978, Walls purchased an undeveloped parcel of land at 13501 South Hill Road, Brandywine, Maryland (the Brandywine lot) with the intent of building a single-family home. In starting the project many years later in 2019, he planned to install an interim well and septic system on the Brandywine lot for use until development in the County brought the public water and sewer lines closer to his property. According to Walls, the present cost of connecting the Brandywine lot to the nearest public water and sewer lines was prohibitively expensive.[2]

In August 2021, however, Walls learned that installation of an interim well and septic system was prohibited by Prince George's County's 2018 Water & Sewer Plan (the Plan), and that he would need to obtain a waiver from DPIE to install such a system. Walls alleges that he applied for the required waiver.

Shirley Branch, DPIE's Water & Sewer Coordinator, later informed Walls that the agency would not approve the use of an interim well or septic system on the Brandywine lot. Branch also told Walls on several occasions that Melinda Bolling, the Director of DPIE, "did not have the legal authority to approve the [waiver]…given the implementation of the [Plan]." J.A. 62.

---

[2] Walls alleges that the estimated total cost of connecting the Brandywine lot to existing water and sewer lines ranged from about $2,124,000 to $2,478,000.

In February 2022, Walls received a letter from Bolling stating that, based on DPIE's research, the Brandywine lot did not meet the criteria for a waiver under the Plan (the 2022 letter). However, in the 2022 letter, Bolling also informed Walls that he could pursue use of an interim well or septic system through a "water and sewer category amendment." J.A. 79. This process initially would require Walls to seek a "Legislative Amendment" from the County Council and, next, to obtain an "Administrative Amendment" approved by DPIE. J.A. 23–24, 27.[3] Bolling attached the relevant application, instructions, and fee schedule to complete this process. Additionally, Bolling informed Walls that there was a residential subdivision planned near the Brandywine lot. She stated that the "project is under review for extending water and sewer lines," and suggested that Walls might be able to connect to the lines for that subdivision once the subdivision was constructed. J.A. 79.

Walls did not seek a "water and sewer category amendment" through the legislative amendment process. He alleges that Branch told him "on several different occasions that the County Council would not support or approve any effort…to use the legislative amendment process to reclassify the Brandywine lot." J.A. 65. Walls further alleges that

---

[3] We take judicial notice of the Plan, which is a public record available on Prince George's County's website. *Adopted 2018 Water & Sewer Plan, Ch. 6*, Prince George's Cnty. (Feb. 9, 2024), https://perma.cc/P3VN-26GS; *see Hall v. Virginia*, 385 F.3d 421, 424 & n.3 (4th Cir. 2004) (taking judicial notice of publicly available information on state government's website). We therefore can consider the Plan in evaluating the sufficiency of Walls' complaint. *See Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) ("In evaluating a complaint's sufficiency…we may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice." (internal quotation marks omitted)).

when he contacted the developers of the proposed subdivision to discuss the feasibility of connecting the Brandywine lot to the proposed subdivision's water and sewer lines, the developer informed him that the subdivision was at least four to five years away from beginning construction and that a connection to the lines was "not feasible." J.A. 64.

In May 2023, Walls filed the present action under 18 U.S.C. § 1983. He alleges that the County and Bolling violated the takings clause of the Fifth Amendment[4] by depriving him of the "beneficial use and economic value" of the Brandywine lot without compensation, because he was prevented from installing an interim well and septic system on his property.[5] J.A. 65. The district court granted the defendants' motion to dismiss, holding that Walls' claim was not ripe for review. Walls now appeals from the district court's dismissal of his case.

## II.

A property owner has an actionable claim under the takings clause of the Fifth Amendment when "a law or regulation [goes] too far in burdening [his or her] property." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). However, such a claim "is not ripe

---

[4] The takings clause prohibits the government from taking private property "for public use, without just compensation." U.S. Const. amend. V, cl. 4.

[5] Walls also asserted two other claims, which the district court dismissed, that are not part of this appeal. The first claim, brought against the County and Bolling, was a regulatory taking claim asserted under Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution. The second claim was brought against the County under 18 U.S.C. § 1983 and stated a claim for failure to train Bolling and Branch.

5

until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 588 U.S. 180 (2019) (citation omitted). To satisfy this finality requirement, the plaintiff must obtain a definitive decision from the regulatory body regarding the proposed development. *See Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 734 (1997). If a plaintiff does not obtain a definitive decision, his claim is not ripe, and the court will not consider it. *See Williamson*, 473 U.S. at 186.

Walls contends that the district court erred in concluding that his claim was not ripe. He first argues that the 2022 letter was an effective denial of his request for a waiver to build an interim well and septic system. Walls asserts that this letter constituted a final decision from the County, satisfying the finality requirement for ripeness in federal court.

Alternatively, Walls contends that even if the 2022 letter did not constitute a final decision on his request to install an interim well and septic system, he was not required to pursue a "water and sewer category amendment" through the County's legislative amendment process. Relying in part on the Supreme Court's decision in *Pakdel v. City and Cnty. of San Francisco*, 594 U.S. 474 (2021), Walls argues that requiring him to do so before seeking relief in federal court impermissibly would require him first to exhaust state administrative remedies. Finally, Walls contends that even if he were required to seek a "water and sewer category amendment" before bringing his claim in federal court, his claim is ripe, because any attempt to complete the legislative amendment process would have been futile. We disagree with Walls' arguments.

6

Initially, we hold that DPIE's denial of Walls' waiver request was not a "conclusive determination" from the County on the proposed use of Walls' property, because the County could have approved the proposed development through a "water and sewer category amendment."[6]  A determination is conclusive when the "government is committed to a position" on the use of the plaintiff's property and no "avenues…remain for the government to clarify or change its decision." *Pakdel*, 594 U.S. at 479.  Here, the 2022 letter makes clear that the County had not committed to a final position on Walls' request for an interim well and septic system.  Although Bolling stated in that letter that "the [Brandywine lot] does not meet the criteria for a waiver," she also stated: "should you seek to further construct on this property, you will need to apply for water and sewer category amendments."  J.A. 78–79.  And the Plan makes clear that the legislative amendment process required to obtain a water and sewer category amendment does not serve as a review of a DPIE waiver decision.  Rather, it is a separate procedure in which the County Council conducts its own evaluation of the property and has plenary authority to deny or grant the requested relief.

This legislative amendment process is not a "repetitive or unfair land-use procedure[]" designed to avoid a final decision.  *See Palazzolo*, 533 U.S. at 621.  To the

---

[6] The district court held that the 2022 letter was not a denial of Walls' waiver request.  We conclude that it is unnecessary to address this question because, regardless of the status of Walls' waiver request to DPIE, the County could not have reached a final decision on Walls' property until he sought a "water and sewer category amendment."  In affirming the holding of the district court, "[w]e are not limited to evaluation of the grounds offered by the district court to support its decision but may affirm on any grounds apparent from the record."  *United States v. Smith,* 395 F.3d 516, 519 (4th Cir. 2005).

contrary, the Plan plainly sets forth the process for applying for a legislative amendment, the evaluation criteria, and the timeline for obtaining a decision from the County Council. The Plan also requires the County to hear applications for legislative amendments four times a year. This is a classic type of "ordinary process[]" required to satisfy the finality requirement for Walls' takings claim. *See id.*

Through this legislative process, the County still could grant Walls permission to move forward with his project. Thus, because there is still an opportunity for the County to change its position on Walls' use of his property, the County has not issued a final decision. *See Chosen Consulting, LLC v. Town Council of Highland*, 148 F.4th 451, 459 (7th Cir. 2025) (explaining that the finality requirement was not satisfied when the municipality could still issue a decision requested by the plaintiff).

Our conclusion is not altered by Walls' reliance on the decision in *Pakdel*, which was based on facts materially different from those before us. There, petitioners sought an exemption from a San Francisco ordinance requiring them to execute a lifetime lease on their property as a condition for converting the property to condominium use. *Pakdel*, 594 U.S. at 476. The city refused the property owner's request for an exemption and threatened to file an enforcement action against the property owner. *Id.* Although the city's position was "definitive," the Ninth Circuit held that the decision did not satisfy the finality requirement because the petitioners' request for an exemption was not timely filed. *Id.* at 478. The Supreme Court disagreed, holding that "administrative missteps do not defeat ripeness once the government has adopted its final position." *Id.* at 480.

8

Here, however, the County has not reached a "definitive" position on Walls' property. As set forth above, the County still may permit Walls to install an interim well and septic system by granting him a "water and sewer category amendment." Therefore, the decision in *Pakdel* is inapposite to the present case.

Finally, we conclude that the record does not show that it would be futile for Walls to pursue a "water and sewer plan amendment" through the legislative amendment process. Although federal ripeness rules do not require that a plaintiff submit futile applications, *see Palazzolo*, 533 U.S. at 625, there is no indication in the present record that Walls' pursuit of a legislative amendment would be a futile endeavor. The futility exception is narrow and applies only when an agency "has dug in its heels and made clear that all...applications will be denied." *Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 349 (2d Cir. 2005).

The present record shows only that Branch informed Walls that "the County Council would not…approve any effort…to use the legislative amendment process to reclassify the Brandywine Lot." J.A. 65. There are no allegations, however, that Branch had the authority to speak on behalf of the County Council or had any insight into that body's view of the issue. Nor are there any allegations that the County Council had a practice of denying legislative amendments as a matter of course. In the absence of these types of allegations, we cannot conclude that it would have been futile for Walls to pursue a legislative amendment from the County Council. Accordingly, Walls cannot evade the finality requirement on this basis.

9

III.

In sum, we conclude that Walls has not received a final decision on the use of his property, because the County can still permit him to install an interim well and septic system through legislative enactment of a "water and sewer category amendment." Accordingly, we affirm the district court's order dismissing Walls' claim without prejudice.

*AFFIRMED*