PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                                  No. 04-4967

SAMUEL CONTRERAS ADAMS,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CR-04-48)

Argued: September 22, 2005

Decided: October 21, 2005

Before WILKINS, Chief Judge, LUTTIG, Circuit Judge,
and James C. DEVER, III, United States District Judge
for the Eastern District of North Carolina, sitting by designation.

Reversed by published opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkins and Judge Dever joined.

## COUNSEL

**ARGUED:** Timothy Vitow Anderson, ANDERSON GOOD, P.C.,
Virginia Beach, Virginia, for Appellant. Vincent L. Gambale,
OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Vir-
ginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States
Attorney, Michael J. Elston, Assistant United States Attorney, Alex-

andria, Virginia; Dee M. Sterling, Special Assistant United States Attorney, Norfolk, Virginia, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

After waiving his right to a jury trial, appellant Samuel Contreras Adams was convicted by a federal district judge of driving while his license was revoked and driving as a habitual offender. On appeal, Adams challenges his convictions on the ground that the road on which he was stopped was not a highway under Virginia law, as required in order to sustain such convictions. We hold that the road, which was completely and indefinitely closed to the public when Adams was stopped, was not a highway and, accordingly, reverse Adams' convictions.

I.

On January 3, 2004, Adams was pulled over by a federal agent on Jericho Ditch Lane, a gravel road in the Great Dismal Swamp National Wildlife Refuge. J.A. 21-23. The agent stopped Adams because Jericho Ditch Lane was closed at that time due to damage from Hurricane Isabel. *Id*. at 22. The agent's request for Adams' driver's license led him to discover that Adams' license had been revoked and that Adams was driving in violation of Virginia's habitual offender statute. *Id*. at 26-27. Adams was charged by a federal grand jury with driving with a suspended or revoked license and driving as a habitual offender. *Id*. at 7-9. The district court denied Adams' motion for judgment of acquittal and found Adams guilty on both counts. *Id*. at 71.

II.

Adams contends that his convictions cannot be sustained because to be convicted of the charged crimes, an individual must drive on a "highway" and Jericho Ditch Lane was not a highway under Virginia law.* Virginia law prohibits drivers whose licenses have been sus-

---

*The Great Dismal Swamp National Wildlife Refuge is within the special maritime and territorial jurisdiction of the United States. J.A. 21.

pended or revoked from operating a motor vehicle "on any highway." Va. Code § 46.2-301(B). Virginia also criminalizes the operation of a motor vehicle "on the highways" by anyone who has been deemed a habitual offender. *Id*. § 46.2-357(A). Virginia defines "highway" as:

> the entire width between the boundary lines of every way or place *open to the use of the public for purposes of vehicular travel* in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located.

*Id*. § 46.2-100 (emphasis added). Adams contends that Jericho Ditch Lane was not a highway under this definition because it was not "open to the use of the public" when he was pulled over.

The district court reasoned and held that because the access "restrictions were both temporary in nature and motivated by public, rather than private, necessity," the temporary closure of Jericho Ditch Lane due to hurricane damage did not "divest this road of its 'highway' status." J.A. 71. Although the roads within the Refuge are usually open to the public, *id*. at 24, Jericho Ditch Lane was completely and indefinitely closed to the public when Adams was pulled over, *see id*. at 23-25. There were signs posted at entrances to the Refuge prohibiting "unauthorized entry," *id*. at 26, federal agents patrolled the closed roads within the Refuge for trespassers, *id*. at 23, and the Refuge had issued several press releases advising the public that the Refuge was closed until further notice because of the storm damage, *id*. at 25.

---

Acts that are not punishable under federal statute but would be punishable if committed within the jurisdiction of the state in which the Refuge is located are punishable under federal law. 18 U.S.C. § 7, 13(a). State law governs traffic safety and the permissible use and operation of vehicles within the Refuge. 50 C.F.R. § 27.31(a).

These undisputed facts compel the conclusion that Jericho Ditch Lane was not open to the public and, thus, was not a highway under Virginia law when Adams was stopped. The Virginia Supreme Court's most recent ruling on the definition of "highway" explained that the "'true test' of whether a 'way' is a highway is 'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel.'" *Caplan* v. *Bogard*, 563 S.E.2d 719, 723 (Va. 2002) (quoting *Prillaman* v. *Commonwealth*, 100 S.E.2d 4, 8 (Va. 1957)) (internal quotation marks omitted); *see also Furman* v. *Call*, 362 S.E.2d 709, 710 (Va. 1987) ("[T]he test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic."). The government does not dispute that on January 3, 2004, Jericho Ditch Road was completely closed to public use for an undetermined period of time. The road, therefore, was not a highway under Virginia law.

Against this conclusion, the government makes two arguments. First, it argues that a publicly owned road must always be a highway. *Appellee's Brief* at 8. Because both "highway" and "private road or driveway" are defined in section 46.2-100, the government contends, every road must be one or the other. And, since a publicly owned road can never satisfy the private ownership requirement for a private road, every publicly owned road must be a highway. *Id.* This argument lacks basis in Virginia authority and does not directly address whether Jericho Ditch Lane was, in fact, a highway under Virginia law. Focusing on the definition of "highway," it is clear that there are publicly owned roads that are not highways because they are not "open to the use of the public for purposes of vehicular travel." *See*, *e.g.*, *United States* v. *Smith*, 395 F.3d 516, 520-21 (4th Cir. 2005) (holding that a federally owned access road leading up to the CIA was not a highway). The government's first argument — that all publicly owned roads must be highways — cannot stand.

Second, the government argues that our inquiry into whether a road is a highway should not be bounded by the facts as they existed at the time of the incident in question but instead should be undertaken in the abstract. According to this argument, the temporary closure, for public safety reasons, of a road that is usually open to the public should not deprive it of its status as a highway. While this argument might have some purchase in a case of a partial closure or a closure

of definite duration, we do not believe that Virginia law permits us to conclude that a road such as Jericho Ditch Lane, which was completely and indefinitely closed to the public when Adams was stopped, was a highway.

Having now confronted on more than one occasion the question of whether a particular road comes within Virginia's definition of "highway," we understand the difficulties that attend interpretation of Va. Code § 46.2 and the consequent uncertainties that result from its attempted application. Our responsibility as a court and as a federal court, however, is limited to interpreting, to the best of our ability, the statute as it was enacted and as it has been construed by the courts of Virginia. If the need exists for changes in the reach or clarity of the statute, that need is properly addressed to the legislature of the Commonwealth.

## CONCLUSION

For the foregoing reasons, appellant's convictions for driving while his license was suspended or revoked and driving as a habitual offender are reversed.

*IT IS SO ORDERED*.