PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

RODNEY T. HILL,
  *Defendant-Appellant.*

No. 06-4092

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(2:05-cr-00044-JBF)

Argued: November 30, 2006

Decided: January 10, 2007

Before KING and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge King and Judge Shedd joined.

## COUNSEL

**ARGUED:** David Wayne Bouchard, Chesapeake, Virginia, for Appellant. Joseph L. Kosky, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Norfolk, Virginia, for Appellee.

**OPINION**

HAMILTON, Senior Circuit Judge:

The sole issue in this criminal appeal is whether the stretch of Nider Boulevard between Shore Drive and Gate 4 of the United States Naval Amphibious Base Little Creek, located in Virginia Beach, Virginia, constituted a "highway" under Virginia law on August 10, 2004, the date of the charged conduct in this case. Answering this question in the affirmative, we affirm Rodney Hill's convictions under the Assimilative Crimes Act (ACA), 18 U.S.C. § 13, on one count of driving a motor vehicle on a Virginia "highway" after being declared a habitual offender, third offense (felony), and one count of driving a motor vehicle on a Virginia "highway" while his driver's license was suspended or revoked, sixth offense (misdemeanor). *Id.* (assimilating Va. Code §§ 46.2-301 & 357(B)(3)).

I.

The United States Naval Amphibious Base Little Creek (the Base) is a military installation located in Virginia Beach, Virginia. Gate 4, one of the guarded entrances to the base, is located on Nider Boulevard near the intersection of Nider Boulevard and Shore Drive. The approximately 200 yard stretch of Nider Boulevard between Gate 4 and Shore Drive is owned and maintained by the United States Navy, yet remains completely open to the public.

In order to enter the Base through Gate 4, a person must be granted access by presenting photo identification to the guard posted at Gate 4. On the day of the charged conduct involved in this case, a sign posted on the fence to the right of Gate 4 read:

WELCOME
PLEASE NOTE
- No weapons allowed
- Military working dog on patrol
- All persons and vehicles may be searched
- All subject to regulations 50 USC 797

(J.A. 91). Next to this sign, on the same fence, another sign read: "NO TRESPASSING." A signed posted on a stand at Gate Four also stated: "STOP — 100% ID CARD CHECK IN PROGRESS HAVE ID READY." *Id.*

Also, the entrance to Boone Branch Medical Clinic (Boone Clinic) is located on the stretch of Nider Boulevard between Gate 4 and Shore Drive. The public may access the entrance to Boone Clinic from Nider Boulevard without restriction. Boone Clinic is a Navy facility on Navy property.

On August 10, 2004, at approximately 8:35 a.m., Officer Bryan Ainsworth (Officer Ainsworth), the civil police officer manning Gate 4 on behalf of the Base at the time, observed Hill in the driver's seat of a vehicle approaching Gate 4.* Upon Hill's vehicle reaching Gate 4, Officer Ainsworth stopped Hill and requested identification. Hill, who was employed by a contractor working on the Base, showed Officer Ainsworth an identification card. However, when Officer Ainsworth asked Hill for his driver's license, Hill responded that he had left it at home in his other pair of pants.

While waiting for a report on the status of Hill's driver's license from the Virginia Department of Motor Vehicles, Officer Ainsworth asked Hill if the report would come back showing that his license had been suspended. Hill responded affirmatively, and the report subsequently confirmed the accuracy of his response.

On March 24, 2005, a federal grand jury sitting in the Eastern District of Virginia indicted Hill under the ACA, 18 U.S.C. § 13, on one count of driving a motor vehicle on a Virginia "highway" after being declared a habitual offender, third offense (felony), and one count of driving a motor vehicle on a Virginia "highway" while his driver's license was suspended or revoked, sixth offense (misdemeanor). *Id.* (assimilating Va. Code §§ 46.2-301 & 357(B)(3)). Hill waived his right to a jury trial and consented to be tried by the district court. As

---

*Officer Ainsworth testified at trial, without contradiction, that at the time of trial he had served a total of six years as a police officer at the Base. Two of those six years he served as a military police officer, while the remaining four years he served as a civilian police officer.

evidence against Hill, the government presented the live testimony of Officer Ainsworth as well as trial exhibits, including photographs of the stretch of Nider Boulevard at issue.

Of relevance in the present appeal, at trial, Hill contested the charges against him on the ground that the stretch of Nider Boulevard between Gate 4 and Shore Drive did not constitute a "highway" under Virginia law.

Following Hill's bench trial, the district court entered a judgment of conviction with respect to the two counts against Hill. The district court sentenced Hill to a total term of thirty months' imprisonment. On appeal, Hill challenges his convictions on the sole ground that the stretch of Nider Boulevard between Gate 4 and Shore Drive did not constitute a "highway" under Virginia law, as required to sustain his convictions.

## II.

Whether the stretch of Nider Boulevard between Gate 4 and Shore drive was encompassed within the legal definition of a "highway" under Virginia law on the day of Hill's charged conduct presents a question of law, which we review *de novo*. *See United States v. Han*, 74 F.3d 537, 540 (4th Cir. 1996) (Court of Appeals reviews questions of law *de novo*). We review the underlying facts as found by the district court in support of its legal conclusion that Hill's charged conduct occurred on a "highway" under Virginia law for clear error. *See United States v. Smith*, 395 F.3d 516, 520-21 (4th Cir. 2005) (reviewing district court's underlying factual findings in support of its conclusion that access road in front of headquarters of United States Central Intelligence Agency in McLean, Virginia was encompassed within legal definition of a "highway" under Virginia law for clear error). The Supreme Court held in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948), and reaffirmed in *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985), that "'[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"

We begin our analysis of this issue by setting forth the Virginia statute at issue. The Virginia Code defines the term "highway," as that

term is found in the Virginia criminal offenses of which Hill was convicted through assimilation under the ACA, as:

> the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, (i) the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located . . . .

Va. Code § 46.2-100. With respect to this statutory definition of "highway," the Virginia Supreme Court has explained that the "'true test' of whether a 'way' is a highway is 'whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel.'" *Caplan v. Bogard*, 563 S.E.2d 719, 723 (Va. 2002) (quoting *Prillaman v. Commonwealth*, 100 S.E.2d 4, 8 (Va. 1957)); *see also Furman v. Call*, 362 S.E.2d 709, 710 (Va. 1987) ("[T]he test for determining whether a way is a 'highway' depends upon the degree to which the way is open to public use for vehicular traffic.").

Here, the district court based its legal conclusion that, on the day of Hill's charged conduct, the stretch of Nider Boulevard between Gate 4 and Shore Drive constituted a "highway" under Virginia law, upon its finding of fact that such stretch of Nider Boulevard "is completely open to public access," (J.A. 96). The district court based this finding upon: (1) Officer Ainsworth's testimony that any person, without restriction, is allowed to proceed down Nider Boulevard up to the actual check point at Gate 4 and then turn around in the cut-through median; (2) Officer Ainsworth's testimony that any person visiting Boone Clinic may travel on Nider Boulevard to access the entrance and parking lot to Boone Clinic; and (3) no signage was posted on or near the stretch of Nider Boulevard between Gate 4 and Shore drive restricting public access to such stretch of road in any manner.

Hill argues that Nider Boulevard was not a "highway" under Virginia law when he was stopped by Officer Ainsworth, because the

stretch of Nider Boulevard between Gate 4 and Shore Drive, as well as Boone Clinic, was private property of the United States Navy with access to such property under the control of the Base's commanding officer. In support, Hill primarily relies upon our decisions in *United States v. Smith*, 395 F.3d 516 (4th Cir. 2005) and *United States v. Adams*, 426 F.3d 730 (4th Cir. 2005).

Hill's argument is without merit. To begin with, the district court's factual finding that the stretch of Nider Boulevard between Gate 4 and Shore Drive "is completely open to public access," (J.A. 96), is not clearly erroneous, as we are not left with a definite and firm conviction that a mistake has been committed after reviewing the entire record. *See United States Gypsum Co.*, 333 U.S. at 395. Indeed, after reviewing the entire record, we are firmly convinced that a mistake has not been committed. First, the record contains the undisputed testimony of Officer Ainsworth, who had served a total of six years as a police officer at the Base, that any person in a vehicle was allowed to proceed without restriction down Nider Boulevard up to the actual check point at Gate 4 and then turn around in the cut through median. Second, the record contains the undisputed testimony of Officer Ainsworth that any person visiting Boone Clinic by vehicle may travel on Nider Boulevard to access the clinic's entrance and parking. Third, the record contains the undisputed testimony of Officer Ainsworth that, to his knowledge, there had never been a physical barrier or restriction to making the left or right turn onto Nider Boulevard from Shore Drive during his six years of duty at the Base. Finally, the record is undisputed that no signage was posted on or near the stretch of Nider Boulevard between Gate 4 and Shore drive restricting the public's vehicular use of such stretch of road in any manner.

With no restrictions on vehicular public use of the stretch of Nider Boulevard between Gate 4 and Shore Drive, such stretch of road falls comfortably within the statutory definition of "highway" under Virginia law, as elucidated by the Virginia Supreme Court. *See* Va. Code § 46.2-100; *Caplan*, 563 S.E.2d at 723. Specifically, the stretch of Nider Boulevard between Gate 4 and Shore Drive is "a 'way' . . . [that] is open to the use of the public for purposes of vehicular travel,'" *Caplan*, 563 S.E.2d at 723 (quoting *Prillaman*, 100 S.E.2d at 8), and is thus a "highway" under Virginia law. Finally, we observe that Hill's point that the stretch of road at issue is always under the

control of the Base's commanding officer is of no moment given that we can reasonably and easily infer from the undisputed evidence in the record that such commanding officer had placed no restrictions on the public's use of such stretch of road on the day of Hill's charged conduct.

We next conclude that *Smith* and *Adams* do not compel reversal of Hill's convictions. Indeed, *Smith* and *Adams* are materially distinguishable from the instant case. In *Smith*, the defendant, who was under the influence of alcohol, drove to the call box on the access road leading to the main gate of the Central Intelligence Agency headquarters in McLean, Virginia, seeking directions. *Smith*, 395 F.3d at 517-18. An ensuing check of the defendant's licensing status revealed a suspended license, resulting in a citation. *Id.* In concluding the access road was not a "highway" under Virginia law and reversing the defendant's conviction for driving with a suspended license under the ACA, we focused on the presence of signage expressly restricting use of the access road to employees and those with authorized business, plainly establishing that the road was not open to public use. *Smith*, 395 F.3d at 521 ("[T]he presence of signs barring unauthorized admittance [to the access road] is sufficient to establish that the access road is not 'open to the use of the public for purposes of vehicular travel.'" (quoting Va. Code § 46.2-100)). The instant case is materially distinguishable from *Smith*, because, as we have explained, the stretch of road at issue here did not have any signage limiting the public's access or use.

Following the reasoning of *Smith*, in *Adams*, we held that a national park road in a federal wildlife refuge, which road was normally open to the public but which had been closed in order to repair hurricane damage, was not open to public use and consequently was not a "highway" under Virginia law. *Adams*, 426 F.3d at 732. Again, signage was posted at the entrances to the road prohibiting unauthorized entry and several press releases were issued to inform the public that the wildlife refuge was closed until further notice. *Id.* We concluded that the prohibition on public access divested the road of its highway status under Virginia law and reversed the defendant's conviction for driving with a suspended or revoked license on the national park road while it was closed. *Id.* ("The government does not dispute that on January 3, 2004, Jericho Ditch Road was completely

closed to public use for an undetermined period of time. The road, therefore, was not a highway under Virginia law."). The material distinction between the instant case and *Adams* is obvious. Unlike the facts in *Adams*, there is no evidence in the instant case that the stretch of Nider Boulevard between Gate 4 and Shore Drive was closed or restricted at the time of Hill's charged conduct.

Finally, we note that the facts of the instant case are even stronger in favor of affirming Hill's convictions than those in *Coleman v. Commonwealth*, 433 S.E.2d 33 (Va. Ct. App. 1993). In *Coleman*, the defendant challenged his conviction on one count of operating a motor vehicle on a Virginia "highway" after having been declared a habitual offender on the ground that the road on which he drove was within a federal enclave, and, therefore, not a "highway" under Virginia law. The Court of Appeals of Virginia affirmed.

The road at issue in *Coleman* was a road within a federal enclave located in Chesterfield County, Virginia. *Id.* at 34. Access to the enclave through the front gate was restricted, as vehicles not bearing registration decals were permitted to pass the front gate only after the operators stated their business. *Id.* Access to the enclave through the rear gate was unlimited when the gate was open from morning until evening, Monday through Friday. *Id.* The Court of Appeals of Virginia, finding the enclave's "minimal restriction in no way constitute[d] an appropriation of the property to private use," held "[t]he road on which Coleman drove [within the federally owned enclave] was open to the use of the public for purposes of vehicular travel" and, thus, was a "highway" under Virginia law. *Id.* at 35. The court reasoned that "[t]he roads are maintained by the United States government for the use of those traveling them on government business or simply for the purpose of going on or through the enclave." *Id.* "Nothing in the arrangement," the court stated, "justifies denying to those travelers the protection of Virginia's public safety highway laws." *Id.*

Likewise, in the instant case, the undisputed evidence shows that the stretch of Nider Boulevard between Gate 4 and Shore Drive is maintained by the United States government for the use of those traveling on government business or simply for the purpose of entering the parking lot of Boone Clinic or even just turning around. Moreover, the evidence in the instant case is even more compelling in

favor of the road at issue being a "highway" under Virginia law, because the stretch of Nider Boulevard at issue was outside the Base's fencing and guard gates.

In sum, we hold the district court's finding that the stretch of Nider Boulevard between Gate 4 and Shore Drive was open to the use of the public for purposes of vehicular travel on the day of Hill's charged conduct was not clearly erroneous. We, therefore, hold the district court did not err in concluding that such stretch of road constituted a "highway" under Virginia law. *See* Va. Code § 46.2-100; *Caplan*, 563 S.E.2d at 723; *Coleman*, 433 S.E.2d at 34-35. Accordingly, we affirm Hill's convictions.

*AFFIRMED*