**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-6699**

———————

JEFFREY PRESTON MCCLUNG,

                                    Petitioner - Appellant,

     versus

LISA HOLLINGSWORTH, Warden,

                                    Respondent - Appellee,

     and

ROBERT P. SHEARIN,

                                    Respondent.

———————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.
(1:02-cv-03557-WDQ)

———————

Argued:  March 16, 2007              Decided:  April 26, 2007

———————

Before MOTZ and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit
Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Brett Alan Pisciotta, KING & ATTRIDGE, Rockville, Maryland,
for Appellant.  Jennifer A. Wright, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States
Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jeffrey Preston McClung, a federal prisoner, seeks to vacate and expunge a prison disciplinary conviction for possession of contraband and restore the good time credits lost as a result of that conviction. We affirm.

I.

On September 1, 2001, McClung shared a first-floor cell in a 139-inmate unit in the Federal Correctional Institution in Cumberland, Maryland with one other inmate. At 11 p.m. that night, Officer Donald Strain, the unit officer on duty, conducted a random search of McClung's cell and discovered a sharpened instrument underneath the desk. Neither McClung nor his cellmate was present in the cell at that time. The instrument was seven inches in length and was made of sharpened metal with a foam handle; a photograph of the object shows a clear resemblance to a home-made knife. Officer Strain immediately secured the cell and the instrument and documented the incident in a report.

Not surprisingly, this type of home-made weapon is considered prison contraband and its possession is an offense meriting a disciplinary proceeding. Because Officer Strain found the weapon in McClung's cell, McClung was brought up on disciplinary charges. McClung's cellmate, Richard Stach, was also charged with possession of this weapon and convicted; Stach's similar appeal was

unsuccessful.  See Stach v. Shearin, 80 Fed. Appx. 821 (4th Cir. 2003) (unpublished).

At his disciplinary hearing, McClung denied ownership of the weapon, arguing that it must have been planted.  The hearing officer considered McClung's testimony, as well as Officer Strain's incident report, a brief memorandum from Lieutenant H. Clifton Gray, a photograph of the weapon, and various prison rules and regulations.  Relying on the prison's constructive possession rule, which holds each cell occupant responsible for all contraband found in his cell when the positive ownership of the contraband cannot be determined, the disciplinary hearing officer found McClung guilty of possessing a dangerous weapon.  Consequently, McClung lost 41 days of good conduct time and was placed into segregated housing.

McClung challenged his disciplinary conviction by petitioning for a writ of habeas corpus in the district court, see 28 U.S.C. § 2241 (2000), seeking to have his conviction vacated and expunged and his good time credit restored.  JA at 58.  McClung argued that insufficient evidence supported his conviction and that various procedural defects in the prison hearing process violated his due process rights.  The district court granted summary judgment to the Warden and dismissed McClung's petition with prejudice.

We affirmed the district court with regard to McClung's procedural claims, finding them procedurally defaulted, but vacated and remanded the case for an evidentiary hearing on the sufficiency

of the evidence underlying McClung's conviction.  See McClung v. Shearin, 90 Fed. Appx. 444 (4th Cir. 2004) (unpublished). Specifically, we directed the district court to explore McClung's assertion that his cell was accessible, not only to McClung and his one cellmate, but also to any of the approximately 140 inmates in his unit.  See id.  If his cell had been accessible to all inmates in the unit, we noted, there would have been "insufficient evidence to connect him to the weapon" arising from the constructive possession rule.  Id. at 446.

## II.

On remand, at the evidentiary hearing, both sides presented extensive evidence to the district court on the issue of the accessibility of McClung's cell to non-occupants.  After hearing the evidence, the district court found that McClung's unit is not in a state of perpetual "lock-down."  Instead, inmates' cells remain unlocked during the day, except during pre-set "head counts" or if an inmate makes a special request to have his cell locked. When inmates are not locked in their cells, no regulations restrict them from walking through the corridors, stopping in front of cell doors, or spending time in the common areas such as the television or laundry rooms.  They can, of course, also remain in their cells. Prison policy states, however, that an inmate may not be in the cell of another without an occupant present.  Although the precise

-5-

number of inmates present in a unit over the day will vary -- inmates may be out, for example, at work placements or at a meal -- inmates are present in the unit, and around the unlocked cells, in significant numbers over the course of the day.

Supervision of the inmates is performed by one correctional officer within the unit. That officer is responsible for maintaining the security of the unit generally, and also for performing certain discrete tasks, notably conducting five random cell or common area searches per shift. During those searches, the officer cannot visually monitor the full unit. McClung introduced evidence that there were other times during the day that the correctional officer on duty could not observe all areas within the unit. For example, when the officer patrolled the second floor cells, he could not see all of the cells on the first floor. Additionally, if the officer stepped outside the unit to enforce the smoking policy, he would not be able to observe all areas within the unit. The unit did not contain any automated surveillance system to supplement the officer's visual observations.

McClung's particular cell was located near the front door leading to the unit, 20 to 30 feet away from the officer's station, and close to the common area television. Officer Strain discovered the contraband underneath the desk in McClung's cell, in an area

that even McClung called "inaccessable" [sic].* The construction of the desk was such that a person could not slide the weapon under the desk from the front, but would have had to lift the desk to secret the weapon underneath. Therefore, in order to have planted the weapon in the cell, another inmate would have had to have been fully inside the cell for some period of time. Officer Strain testified that on September 1, he had not seen another inmate go into McClung's cell, nor had McClung complained about anyone entering his cell without his permission or asked that his cell door be locked.

The district court concluded that McClung had presented "no evidence that other inmates had entered his cell." Instead, the district court found, as a factual matter, that the cell in which the contraband was found was the "exclusive domain" of McClung and his cellmate. In so finding, the district court observed that the "Due Process Clause does not require continuous lock-down as a prerequisite to imposing punishment for joint possession of contraband in an inmate's cell." Therefore, the court again dismissed McClung's petition with prejudice and, again, McClung appealed.

---

*We understand McClung's comment to indicate only that the area under the desk was not easily or immediately accessible, not to contradict his principal argument that other inmates could have entered his cell to plant the contraband.

-7-

III.

When an inmate brings a habeas petition to challenge the sufficiency of the evidence underlying a revocation of his good time credits, the requirements of due process are met when "the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985). On appeal from denial of such a habeas petition, we review the district court's conclusions of law de novo and its findings of fact for clear error. Billings v. Polk, 441 F.3d 238, 243 (4th Cir. 2006).

If a disciplinary conviction for possession of contraband is based on the presence of contraband in a particular location, the constructive possession rule provides "some evidence" of guilt only when relatively few inmates have access to the area. Thus, if McClung were correct that the record demonstrated that scores of other inmates in the unit had access to the area of his cell in which the weapon was discovered, the constructive possession rule standing alone would be insufficient to provide "some evidence" to support his conviction. But McClung is not correct.

Although he did produce evidence at the hearing to suggest deficiencies in correctional officers' ability to monitor the unlocked cell doors at all times, the evidence as a whole tended to show that gaining access to the interior of McClung's cell, and the area beneath the cell's desk, would have been difficult for another

inmate.  McClung's cell was located in a particularly public area of the unit, and the weapon was located in a particularly inaccessible area within that cell.  Furthermore, McClung provided no evidence that showed that any other inmate had actually gained access to his cell or that he had requested that his cell be locked because he feared such occurrence.  Given this record, we certainly cannot say that the factual finding of the district court -- that McClung's cell was the "exclusive domain" of its occupants -- was clearly erroneous.  See United States v. Hill, 473 F.3d 112, 115 (4th Cir. 2007) (noting that a factual finding is only clearly erroneous if the reviewing court is "left with a definite and firm conviction that a mistake has been committed after reviewing the entire record") (citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

This situation differs markedly from those cases in which courts have found the constructive possession rule provides insufficient proof of ownership to satisfy the "some evidence" standard.  For instance, Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001), relied upon by McClung, held that the constructive possession rule did not provide some evidence when the contraband at issue was found in the kitchen area –- an area accessible to 100 inmates.  Cf. Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992) (constructive possession rule would provide some evidence if inmate was one of four with access).

We decline to hold today that an inmate's unlocked cell, simply by virtue of being unlocked, becomes transformed into a common area akin to a kitchen or television lounge in which the constructive possession rule has no application. The Due Process Clause does not require continuous lock-down before allowing punishment for possession of contraband found in inmates' cells. Therefore, since a dangerous weapon was discovered in a cell that was the "exclusive domain" of McClung and his cellmate, the constructive possession rule provides the necessary "some evidence" sufficient to sustain McClung's disciplinary conviction.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.